285 So.2d 282 (1973)
John E. BAKER
v.
D. H. HOLMES COMPANY, LTD. et al. (consolidated with No. 5850-Barbara Clement Baker v. D. H. Holmes Company, Ltd. et al.).
No. 5851.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
*283 Daniel E. Becnel, Jr., Reserve, for plaintiff-appellee.
Sims, Mack & Sims, Joseph A. Sims, Jr., and Robert J. Mack, Hammond, for plaintiff.
Trombatore & Vondenstein, Benjamin J. Trombatore and Michael J. Power, Kenner, for appellee.
*284 Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Allen R. Fontenot, New Orleans, for appellants.
Before LEMMON, J., and BAILES and FLEMING, JJ., Pro Tem.
LEMMON, Judge.
In the car-truck collision which gave rise to this litigation, Jerry Gros was driving the tractor-trailer truck in the course of his employment with D. H. Holmes, Ltd., and John E. Baker was driving the automobile, in which his wife was a passenger. Mrs. Baker instituted a suit for her damages against Holmes, Holmes' insurer and her husband's insurer, while her husband filed a separate action against Holmes and its insurer.
The consolidated cases were tried before a jury, which found both Gros and Baker negligent, but determined that Baker's negligence was not a proximate cause of the accident. The trial court accordingly rendered judgment following the verdict against Holmes and its insurer in both cases, and these defendants appealed.
In this court the principal issues are the correctness and prejudicial effect of rulings on evidence and special jury instructions, the resolution of conflicting testimony as to which vehicle crossed the center line prior to the collision, the effect of Baker's violation of a statutory duty on his legal liability, the sufficiency of proof as to the cause of Mrs. Baker's injury, and the adequacy of the amount of damages awarded.
The accident occurred on a rainy December afternoon on Highway No. 61 near Norco in St. Charles Parish. Shortly before the accident, Gros had stopped for a traffic light in the right lane of two southbound lanes. A school bus turned onto the highway in front of him and also headed south. Thereafter, Gros followed the bus in the right lane until the bus flashed its warning lights and came to a stop, partially on the highway and partially on the shoulder, in order to discharge passengers. The happenings thereafter are in dispute.
Gros testified that he had followed the bus at a distance of four car lengths; that when he saw the flashing lights, he was still in second gear, traveling 25 to 30 miles per hour; that he slowed to a complete stop about one car length behind the bus, at which point he was entirely within the right lane; that in the rear view mirror he saw Baker approaching in the left lane at a fast rate of speed; that Baker struck the truck's front fender and door on the left side; and that the cab of the truck was moved close to but not across the center line by the impact.
Another Holmes driver testified that he was also traveling in the right lane about 400 feet behind Gros at 35 miles per hour; that Baker passed him in the left lane at a high rate of speed; that while passing Gros' truck Baker applied his brakes and skidded toward the right into that truck; that Gros' truck was completely stopped and was entirely in the right lane at the time of collision; and that the impact knocked the truck's bumper and fender over the center line by about five inches.[1]
On the other hand, Baker testified that he had been driving 55 miles per hour, the speed limit on the Spillway bridge, but had slowed down at his wife's request and was *285 going between 40 and 45 in the 70 zone where the accident occurred; that he attempted to pass Gros' truck, which was traveling five to ten miles per hour slower than his car; that when he reached the center of the truck trailer, the truck cab came across and several feet into his lane; that he had no opportunity to apply his brakes before striking the side of the cab; that he didn't see a school bus before or after the accident; and that after the accident the front of the cab was across the center line.
Mrs. Baker substantially corroborated her husband's testimony, stating that the cab of the truck came partially across the lane in which they were traveling and that they were still in the left lane at the time of impact.
A northbound motorist witnessed the events which led up to the accident and testified that just before impact he saw "the cab of the truck swing out into the other lane of traffic". This witness thereafter assisted by directing traffic and observed that the truck had come to rest about two feet over the center line. The investigating officer, after referring to his report, testified that when he arrived on the scene, he found the cab of the truck covering half of the left lane.[2]

GROS' NEGLIGENCE
The jury was thus presented with two versions of the accident: Baker's version that the truck invaded his lane while he was in the act of passing, and Gros' version that Baker lost control in the act of passing, either upon seeing the school bus or because of excessive speed, and skidded into the truck. In resolving the conflicting testimony, the jury apparently rejected Gros' version and concluded that Gros had entered Baker's lane at the time when it was unsafe to do so. We deduce this, because there was no evidence of any other negligence on Gros' part, and the jury found him negligent.
Appellants concede that the jury's factual findings should not ordinarily be disturbed in the absence of manifest error, but argue that several erroneous rulings by the trial judge prejudicially influenced the jury. They first complain that the trial judge erred in allowing the investigating officer to give opinion evidence, although there was not even an attempt to qualify him as an expert witness.[3]
The trooper found no debris and couldn't determine whether there were any skidmarks because of the condition of the road. He did not testify as to specific statements made by either driver. The only factual evidence that he contributed was the position of the vehicles when he arrived at the scene and the damage observed on the vehicles. Nevertheless, over counsel's objections, he was allowed to answer questions as follows:
"Q: With reference to this white line were you able to determine from your investigation if either of the vehicles involved crossed the dividing white line?
"A: The truck crossed the white line."
MR. FONTENOT:
"I object to that on the same grounds previously stated."
THE COURT:
"I have to overrule your objection."

*286 MR. MALIK:
"Q: What is your answer?
"A: The truck jackknifed and the tractor part of the truck was covering just about one-half of the inside traffic lane."
MR. MALIK:
"No other questions."
Appellants contend that the trooper, testifying in uniform, represented "the law" in the eyes of the jurors and that his conclusionary statements as to how the accident occurred prejudicially influenced the jury. We agree that, since the trooper did not see either vehicle cross the center line prior to impact, the questions and answers quoted above should have been excluded.
Expert witnesses qualified in accident reconstruction may be allowed to state conclusions under certain circumstances and after a proper foundation has been laid. However, the witness in this case was simply a lay witness, and his testimony had to be confined to facts that he himself perceived or to admissions by parties or employees of parties. Technically, the specific question did not ask the lay witness to state his conclusion, but merely asked him if he had formed a conclusion. Nevertheless; it was irrelevant whether or not he had formed a conclusion, since the conclusion was inadmissible, and the objection should have been sustained. We conclude that allowing the trooper to state his conclusion on the crucial fact determinative of liability constituted prejudicial error.
However, we do not believe that a remand is necessary in this case. When a reviewing court determines the trial judge made an erroneous and prejudicial ruling on evidence presented to the jury, then the court simply declines to accord the usual weight to the jury's factual findings. The reviewing court can then make its own findings of fact, Const. Art. 7, § 29, and decide the case on the record, or can order a remand or retrial if necessary.
After reviewing the record in the present case, we are convinced the evidence preponderates in favor of a conclusion that the truck moved into Baker's lane at a time when it was unsafe to do so and that the impact occurred in the left lane. All credible evidence placed the truck in the left lane after impact. If the glancing blow described by the witnesses moved the truck at all, it almost certainly would have pushed the cab away from the center line. Furthermore, while the independent eyewitness testified with greater certainty at trial than he had indicated in his recorded statement, he did indicate in the statement that the truck moved into Baker's lane. The prior statement, if inconsistent at all, did not contradict the testimony in this respect or in any material aspect.

BAKER'S NEGLIGENCE
As to evidence of any excessive speed or other imprudent conduct by Baker, we decline to assign any weight to the confused testimony of the second Holmes driver or to the observation made by Gros' glance in his rear view mirror. The independent eyewitness did not testify that Baker was driving carelessly or at an excessive rate of speed, nor was he questioned as to Baker's speed or conduct.
The party relying upon contributory negligence has the burden of proving it. Smolinski v. Taulli, La., 276 So.2d 286 (1973). We conclude that appellants have failed to prove any negligent act or omission by Baker in this case, except his admitted failure to stop behind the school bus.

CAUSATION
Appellants contend Baker's violation of R.S. 32:80, which requires a motorist to stop before reaching a school bus discharging children, constituted negligence per se, which proximately caused the accident.
*287 The basis of tort liability is the existence of a duty and a violation of that duty which results in damages. In accordance with the method outlined in Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970), we determine liability by first determining whether the act complained of was a substantial factor in causing the accident, then by determining what duty was imposed and whether the risk created by a breach of that duty was one for which the statute intended to offer protection, and finally be determining whether there was a breach of that duty.
Here, Baker violated a criminal statute by failing to stop before reaching a school bus discharging passengers. However, violation of a criminal statute does not in and of itself impose civil liability. Laird v. Travelers Ins. Co., 263 La. 199, 267 So.2d 714 (1972). The violation must be the legal cause of damage in order for civil liability for that damage to attach.
Baker's failure to stop was a substantial factor without which the accident would not have occurred; had he stopped, there would have been no accident. Nevertheless, the crucial questions are: What was the nature of the duty imposed upon Baker and what risks were encompassed within that duty?
Obviously, Baker's duty to stop behind the school bus was not owed to a motorist who entered his lane when the move could not be made with safety. Moreover, Baker's violation of the statutory duty to stop before reaching the school bus did not create a risk within the scope of the protection that the statute intended to afford.
In enacting the statute under consideration, the Legislature intended to protect children who were in the process of boarding or being discharged from a school bus. None of the children intended to be protected were injured by Baker's violation. Under the duty-risk theory of tort liability, Baker's violation of this statute did not create a risk which resulted in the damages upon which this suit is based. See also Kruebbe v. National Fire & Marine Ins. Co., 274 So.2d 832 (La.App. 4th Cir. 1973).
Taking another view of the effect of the bus' presence on Baker's liability, we observe that if Gros had been required to stop by some vehicle other than a school bus, the accident would have occurred in exactly the same manner. On the other hand, if Gros had remained in his lane (as required by R.S. 32:79), the accident would not have occurred, despite Baker's statutory violation.
We therefore conclude that Baker breached no duty that he owed to Gros or to Mrs. Baker and that Gros' breach of duty was the legal cause of the accident.

CAUSE OF INJURIES
Appellants contend Mrs. Baker failed to establish that the injury to her jaw resulted from the right side of her face striking the dashboard and windshield, inasmuch as her husband also struck her in the face shortly after the accident. Citing Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656 (1941), appellant argues that when the evidence shows two or more equally probable causes for an injury, for not all of which the defendant is responsible, then the plaintiff has failed to prove that the defendant caused the injury.
We agree that the trial judge or jury has discretion only as to the extent of the damages and not as to the cause, which must be established with legal certainty by a preponderance of the evidence. However, Mrs. Baker has borne that burden in this case.
Her husband testified that she was hysterical after the accident and that, after shaking her did not calm her down, he slapped her once on the left side of her face. Her physician, while admitting that one person could possibly break another's jaw with the fist, attributed the injury to *288 the accident, particularly in view of the fact that most of her injuries (including the jaw fracture) were on the right side of the body. Additionally, the Holmes driver described the blow only as "a slap".
We cannot conclude that the evidence established two equally probable causes of the jaw injury. On the contrary, we conclude (as did the jury) that Mrs. Baker sustained the injury in the accident.

ANSWERS TO APPEAL
Although both Mr. and Mrs. Baker filed answers to the appeal, seeking an increase in the awards, all parties now concede that the award to Mrs. Baker was within the range of the wide discretion vested in the jury.
As to Baker's award, he sustained a hematoma of the leg and a contusion of the forehead. He visited the doctor three times, and the doctor discharged him to return to work as a steeplejack and painter ten days after the accident. He never sought further medical attention.
We find no abuse of discretion in the jury's award of $500.00 for pain and suffering. C.C. art. 1934(3).
Baker also complains that the jury failed to award him his wife's future medical expenses, which he had claimed on behalf of the community. The dentist testified that at the time he last examined Mrs. Baker, she still "required a crown on the fractured anterior tooth and another three-unit bridge on the left side to help in closing her mouth." He estimated the cost of this work at $420.00.
The jury erred in not including these necessary expenses in the award, and we amend the judgment accordingly.
Baker's final claim that the bridges will have to be replaced within his wife's normal life expectancy was not adequately proved.

DECREE
The judgment of the trial court is amended to increase the award to John E. Baker, as head and master of the community of acquets and gains, in the amount of $420.00. As amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] This witness was confronted with a deposition in which he had stated that the accident took place in the left lane, next to the neutral ground, but on redirect examination he reaverred (as he had also stated in the deposition) that Baker was in the left lane and that Gros was in the right lane until after the impact.

This witness also gave other conflicting testimony. At one point he stated, "Mr. Baker shot by me like a bat before I come to a stop." Four questions later he was asked:
"Q. When Mr. Baker came by you you were already at a stop?
"A. Yes sir, I was at a stop."
Additionally, he testified that all but one child had gotten off the bus at the time of the collision, while Gros testified that no children had yet been discharged when his truck was hit.
[2] Appellants attack the credibility of this testimony on the basis that traffic used the left lane after the accident and before the truck was moved. While the officer's refreshed memory was apparently erroneous as to the extent the truck obstructed the left lane after impact, the important consideration is that the truck did in fact occupy this lane to some extent.
[3] Since we conclude that this evidentiary ruling was prejudicial, we do not discuss the alleged errors of denying as inapplicable a special charge on the duty of a motorist to stop behind a school bus discharging children and of refusing to allow use of a prior recorded statement to impeach the eyewitness' testimony at trial.