LEMMON, Judge.
This appeal principally questions the trial court finding that Thomas Hartdegen was contributorily negligent in a two-vehicle collision. Also at issue is the amount of the award to Hartdegen’s sister, who was a passenger in his car.
Just before the mid-morning accident Hartdegen was traveling west on U. S. Highway 61, approaching an oil refinery in the town of Norco. The weather was overcast and misty, and the roadway was wet from an earlier rain. The highway in the vicinity consisted of four lanes, two on each side of a neutral ground. At the entrance to the refinery was a break in the neutral ground, which allowed westbound traffic to enter and leave the refinery located on the south side of the highway.
The other vehicle involved in the accident was an oil transport rig, consisting of a tractor and a gasoline trailer totaling 50 feet in length. Russell Juneau, driving the rig, left the refinery, crossed the two eastbound lanes, and turned left into an accelerating lane, which was located within the neutral ground. The accelerating lane served to allow left-turning traff-ic, coming out of the refinery, to merge into the left of the two westbound lanes of the highway.
Juneau stopped in the accelerating lane, saw traffic in the right lane “one behind the other”[1] but none in the left lane, turned on his blinker signal, and pulled out into the left lane.
Hartdegen testified that he had occupied the left lane for several miles; that he was traveling 45 to 50 miles per hour as he approached the refinery entrance; that when he was about a block away he noticed the truck unexpectedly started into his lane when he “was close enough to the man so that it put me in an immediate bind when he came out”;[2] that he couldn’t change lanes because there was a car in the right lane just ahead of him; that he hit his brakes and skidded into the trailer; and that the left front of his car hit the right rear of the trailer.
All debris was found in the left side of the left lane, near the accelerating lane. Hartdegen’s car came to rest in the left lane at an angle to the left.
The driver of the car on Hartdegen’s right testified that he was driving in the right lane at about the speed limit, which was 50 or 55 miles per hour; that Hartde-gen passed him just before the refinery entrance at a speed 15 to 20 miles per hour faster than he was driving; that about the time Hartdegen passed him, the truck pulled out, and Hartdegen applied his brakes and began skidding; and that he immediately applied his own brakes and eased to a stop about 75 feet before the point of collision.
The trial judge found both Juneau and Hartdegen negligent.
Under any version presented, Juneau was negligent in failing to yield the right of way by entering the highway at a *336 time when a vehicle was so close as to constitute an immediate hazard. R.S. 32:124.
The determination of Hartdegen’s liability is more difficult. Tort liability is based on the existence of a duty and a breach of that duty which results in damages. Baker v. D. H. Holmes Co., 285 So.2d 282 (La.App. 4th Cir. 1973). The testimony of the disinterested witness established that Hartdegen breached his duty of reasonable care by driving at a speed 15 to 20 miles per hour above the posted limit on a wet highway. The key inquiry is whether that breach of duty, under the circumstances of this case, was a substantial factor in causing the accident. See Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970). In this case we pose the determination in these terms : If Hartdegen’s driving at a reasonable speed would have prevented the accident, then his excessive speed was a substantial factor in causation.
We conclude that if Hartdegen had been driving at a reasonable speed under the circumstances, he would have prevented the accident. We base this conclusion on the fact that the motorist on Hartde-gen’s right, who was about even with Hartdegen when the truck pulled out and was driving at the upper limits of reasonable speed under the circumstances, applied his brakes after Hartdegen did and managed to stop 75 feet before the point of collision. Admittedly, some of that motorist’s estimates of distances were inaccurate and confusing [3]; however, his crucial testimony as to his and Hartdegen’s relative positions and speed when the truck pulled into the left lane convicts Hartdegen of conduct which falls below the standard to which he should have conformed for his own protection. Such conduct constitutes contributory negligence. Smolinski v. Taulli, La., 276 So.2d 286 (1973).
AWARD TO MISS HARTDEGEN
Joan Hartdegen, 17 years old at the time of the November 23, 1970 accident, was thrown around in the car and struck her head, elbow, knee and other parts of her body. The next day she noticed, in addition to muscular stiffness, that her vision was blurred when she attempted to study and that she became dizzy when she bent over.
Two days after the accident she consulted a general practitioner, who diagnosed a moderately severe cervical sprain with muscular irritation, a moderate contusion and small hematoma of the scalp, an elbow abrasion and a knee contusion. He prescribed medication and administered diathermy to the neck.
During the next six weeks the neck, elbow and knee problems were gradually resolving. However, since the headaches, blurring and dizziness persisted and Miss Hartdegen exhibited depression, confusion, inability to concentrate and persistent drowsiness, the doctor referred her to a neuropsychiatrist.
A January 8, 1971 electroencephalogram revealed abnormalities consistent with a head injury. The neuropsychiatrist administered mathematical and scaled information tests, and Miss Hartdegen’s responses were spotty and confusing. From her history and the testing, the doctor concluded she was not functioning up to par for her intelligence level.[4] He diagnosed post- *337 traumatic encephalopathy and a modified narcoleptic state, and prescribed medication and modified counselling for purposes of reassurance.
As Miss Hartdegen progressed steadily under psychiatric care, her confusion lessened and her headaches became less frequent and less severe. A February electroencephalogram showed some improvement. By the end of April, many of her original symptoms had disappeared, and she suffered only occasional headaches.
She continued to progress and in mid-June discontinued all medication. In mid-July her electroencephalogram tested within normal limits, and since she was working and able to concentrate, the doctor discharged her. Thereafter, she had no further emotional problems.
In April, 1972, about 17 months after the accident, Miss Hartdegen suffered an onset of acute pain in the upper left quadrant. Testing revealed a hemotoma of the spleen, which necessitated surgical removal of the organ.
When the surgeon had first examined Miss Hartdegen, he suspected possible spleen injury and questioned her as to recent trauma. She denied any recent trauma, but described the November, 1970 accident and a stumbling or severe dancing episode some weeks before the examination.
After the operation the surgeon studied pathological data and opined that the injury had been caused by blunt trauma not less than six months before the surgery, but not more than two years prior thereto. Inasmuch as the automobile accident fell within this time period and the forceful trauma described by Miss Hartdegen was sufficient to cause the injury observed, the doctor attributed the injury to the accident. As to the delayed symptomatology, the doctor explained that when a spleen ruptures grossly and bleeds into the abdominal cavity, the loss of blood produces immediate symptoms, but when the rupture is contained within the capsule of the spleen, the immediate symptomatology could be practically negligible, particularly if there were other areas of pain at the time.
When Miss Hartdegen testified later at trial, she stated she had been in another automobile accident one to three months before the accident which underlies this litigation. Because the surgeon, whom Miss Hartdegen relied upon to prove causal connection, had not been aware of this other accident when he stated his opinion as to causation, the trial judge held that she failed to sustain her burden of proof.
The trial judge, particularly impressed by Miss Hartdegen’s substantial mental anguish and emotional upset, awarded $6,000.00 in general damages for the injuries other than the spleen injury, in addition to the doctors’ bills and medicine costs incurred in treating those injuries. After reviewing the record, we conclude this award for those injuries is within the “much discretion” vested in the trial judge by C.C. art. 1934(3).
We disagree, however, that Miss Hart-degen failed to prove causal connection between this accident and the spleen injury. She described the earlier accident as one in which she skidded two feet and struck a post, denting a fender. She was not injured, and no part of her body struck the car interior. She went on to school and did not seek medical attention.
The surgeon described the degree of trauma necessary to cause a subcapsular hematoma of the spleen as follows:
“She would have had to sustain some blunt trauma. Not necessarily immediately in the area of the spleen. Any type of trauma that would produce a forceful effect on the spleen in any part of the abdominal cavity could be transmitted to the area of the spleen.”
******
"There would have to be some application of force to the body that produced a *338 sudden increase in the effect on the in-tra-abdominal pressure. Either it was a blow or a compressing of some sort.” (Emphasis supplied)
In expressing his opinion on causation, the surgeon further stated:
“My feeling about this was that at the time of injury in which the patient was thrown forward in a vehicle, the head striking the top of the car and the leg ■striking below the knee, would produce a doubling over effect which would be a compressing effect on the abdomen and giving the effect of a sudden increase in the intraabdominal pressure. And, I believe if the forward motion was such, producing a compressing effect of the whole trunk were adequate, that a spleen could be injured as a result of that”
From this and other descriptive testimony by the surgeon, and from Miss Hartdegen’s description of the minor collision, we conclude that the earlier accident was insufficient to cause Miss Hartdegen’s spleen injury, but rather that the violent collision with the gasoline trailer in all probability caused the injury. A party’s proof is sufficient to constitute a preponderance when the evidence, taken as a whole, shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). Although a statement by the surgeon that such a collision was insufficient to cause a ruptured spleen would have added a higher degree of certainty to Miss Hartdegen’s proof, the preponderance of the evidence that is in the record lies with the plaintiff.
Miss Hartdegen spent 16 days in .the hospital at a total cost of $2,121.15 for the hospital and $491.00 for the surgeon. She underwent surgery under general anesthesia and suffered post-operative pain, including discomfort from insertion of several tubes. The surgical scar, 14 inches long and Yz inch wide, formed a keloid, which caused pain on motion. The surgeon predicted the discomfort would gradually subside, but the scar from her sternum to her abdomen would not improve in appearance. In October, 1972 the surgeon described her condition as good and felt her complaints of pain were not sufficient to institute pain relieving procedures.
Although the spleen performs certain important body functions, the doctor opined Miss Hartdegen’s prognosis was good, because in young, healthy adults other areas of the body take over these functions. He stated she suffered no specific disability from the loss of the spleen.
We therefore set the award for the pain, suffering and permanent' disfigurement for this injury at $7,500.00, in addition to the medical expenses of $2,612.15.
The trial judge properly rendered judgment on defendants’ reconventional demand against Thomas Hartdegen for contribution as to any amount paid Joan Hart-degen under the judgment.
Accordingly, the judgment is amended to increase the award to Joan Hartdegen by $10,112.15, and as amended, the judgment is affirmed. The costs of this appeal, including the $200.00 expert fee to Dr. Lawrence D. Kavanagh and the $150.00 cost for transcribing his deposition,[5] are assessed one-half to Thomas Hartdegen and one-half to defendants.
Amended and affirmed.

. On later examination Juneau stated there was no traffic in either lane within a half mile as he pulled out onto the highway.

. Hartdegen reluctantly estimated his distance from the truck when the truck started out as twice the length of the courtroom, or 47 feet.

. The witness estimated that the accelerating lane was 150 feet long, that Hartdegen began braking just before the refinery intersection where the accelerating lane began, and that the collision took place 300 feet or more past the intersection. Yet the trailer was still partially in the accelerating lane at the point of collision. Another inconsistency was that the witness necessarily started braking after Hartdegen passed him (around the intersection) and braked from 55 miles per hour to a complete stop 75 feet from the collision. From this we conclude either that the accelerating lane was longer than 150 feet or that Hart-degen passed him before the intersection, probably the latter.

. Miss Hartdegen attended a school for high I.Q. students and had maintained a high B average. After the accident, however, her grade average dropped to low C, and she even failed one course.

. Expert fees of the other doctors and the costs of their depositions were included in the trial court judgment.