599 So.2d 883 (1992)
Ruby FONTENOT, et al., Plaintiffs-Appellants/Appellees,
v.
Kenneth COOPER, et al., Defendants-Appellees/Appellants.
John FONTENOT, et al., Plaintiff-Appellant/Appellee,
v.
Kenneth COOPER, et al., Defendant-Appellee/Appellant.
Nos. 91-785, 90-1295.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*884 Gist, Methvin, Hughes & Munsterman, Howard A. Gist, III, James B. Reichman, David Hughes, Stafford, Stewart & Potter, Russell Potter, Bradley Gadel, Alexandria, for Geico.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellant.
Eugene Cicardo, Alexandria, for intervenor-appellant.
Raggio, Cappel, Chozen & Berniard, L. Paul Foreman, Lake Charles, for Cooper.
Plauche, Smith & Nieset, Jeffery M. Cole, Lake Charles, for Farmers Ins.
Brittain & Williams, Russell L. Sylvester, Joe P. Williams, Natchitoches, and F. Clay Tillman, Jr., Leesville, for La. Farm Bureau Ins.
Before YELVERTON, KNOLL and MARCANTEL,[*] JJ.
YELVERTON, Judge.
This appeal is from a judgment based on jury findings of liability and damages resulting from a head-on collision between two cars on a country road in Vernon Parish.
The case comes before us on two issues. The first is responsibility for the accident. Ruby Fontenot, the plaintiff, claims that both drivers, and not just one as found by the jury, shared in the fault that caused the accident. In this contention Ruby is joined by one of the defendants, Government Employees Insurance Company (GEICO), in its capacity as the uninsured motorist carrier.
The other issue on appeal is the amount of the award, and it is raised by Ruby alone. She contends that the award was grossly insufficient. The liability insurers of the two drivers are satisfied with the amount of the award.
After giving careful consideration to all of the evidence in this case, we are convinced that the appellants should prevail on both issues. Because of a reversible error by the trial court in the admission of evidence, the jury finding as to liability was erroneous. We find, also, that the jury's award was so low that it was an abuse of discretion. We modify the judgment accordingly, for reasons which we now explain.

LIABILITY
The accident happened in the afternoon of August 2, 1983, on a narrow blacktopped country road in a curve. Two Pontiac cars, one a 1980 gold-colored Bonneville driven by Betty Perkins, and the other a 1982 black Bonneville driven by Candace Cooper, collided left front to left front. Ruby Fontenot was a passenger in the gold Pontiac.
By all accounts, speed was not a factor. Attentiveness was, and control was. The occupants of each vehicle testified that their car was hugging the right side of the road. The jury found that Cooper, driving the black Pontiac, was 100% at fault.
The basis for this jury finding is not hard to figure out. Louisiana State Trooper C.J. Deters testified that when he got to the scene after the accident, everybody was gone, but the cars were still where they had come to rest on the black car's side of the road. Nevertheless, he testified that the point of impact was one and one-half feet from the center line on the gold car's half of the road. The trial judge charged the jury that when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and the burden is on him to exculpate himself of any fault, however *885 slight, contributing to the accident. This instruction, which was right, and Trooper Deters's testimony, which was wrong, explains how the jury reached a finding that the Cooper driver was 100% to blame.
Without Trooper Deters's testimony, it is highly likely that the jury would not have assessed Cooper with 100% of the fault. This is so because the trooper's excellent-quality photographs of the wreck scene, taken immediately after his arrival and before the vehicles had ever been moved, strongly suggest that the point of impact was in the opposite lane of travel from where Deters testified. Deters testified that the positions of the vehicles at the point of impact, and their positions where they came to rest after the collision, were different. He drew a sketch showing those relative positions. He admitted at the trial that his sketch, which showed the positions of the cars when they came to rest, was wrong. He was forced into that admission because his photographs of the scene belied the sketch. These photographs show the gold car entirely on the road, its front end well over into the other lane of traffic. The black car is mostly off the road, its front end just inside its own lane. There are no skid marks or gouges visible on any photograph. There is, however, a lot of debris visible on all of the photographs, and the debris lies between the front ends of the vehicles where they came to rest, well inside the Cooper half of the road. Trooper Deters reconstructed the accident, basing his reconstruction opinion solely on his observation of the non-apparent skid marks, in order to find a point of impact remarkably different from that suggested by the location of the cars and the debris in the photographs.
Strenuous objection was made to Trooper Deters' opinion testimony. The trial court overruled the objection. At a bench conference, explaining his ruling, the trial judge stated that he would not accept the witness as an accident reconstruction expert, but that he would allow him to "express some opinions as to certain things." The witness was then asked specifically where was the point of impact, and a specific objection to the expression of that opinion was over-ruled. His response was one and one-half feet from the center of the road in the gold car's lane of travel.
We find that allowing the trooper to express this opinion was prejudicial error. It was prejudicial error in Baker v. D.H. Holmes Co., Ltd., 285 So.2d 282 (La.App. 4th Cir.1973), when a state trooper was allowed to testify as to his opinion on the crucial fact determination of where on the road's surface two vehicles came together. There, as in the present case, the trooper did not see the accident and he was not qualified as an accident reconstruction expert. He was merely a lay witness. Because he represented "the law" on the witness stand, the Fourth Circuit ruled that his conclusionary statements as to how the accident occurred prejudicially influenced the jury.
In our own decision in Prince v. Travelers Insurance Co., 320 So.2d 227 (La.App. 3rd Cir.1975), we recognized that a police officer who investigated an accident can testify as to the location of the vehicles, the presence of debris, the extent of the apparent damage, and the damage location on the vehicles, as this would be persuasive as to the mechanics of the accident itself. However, we said that a police officer could not testify, unless he had been an eyewitness, as to whether one of the vehicles had crossed the lane of the other when the accident happened. We did not reverse in that case, because the officer's testimony was merely cumulative of other evidence which established the fact, and therefore, although it was error to let the officer testify, we did not find it to be reversible error.
We said in Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3rd Cir.), writ denied, 565 So.2d 450 (La.1990) that, unless a state trooper is qualified as an accident reconstruction expert, his testimony is limited to opinions based upon his rational perception of the facts and recollections pertaining to the scene of the accident. La.C.E. art. 701, though technically inapplicable to this case because its effective *886 date was after this proceeding commenced, states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
This article does not sanction the opinion testimony of Trooper Deters in this case. He testified that he did not see the accident; he came upon the scene after it had happened and everybody connected with it was gone. He testified as to his opinion of the point of impact long before he was asked to state the facts on which he based that opinion. Ultimately, the only perception upon which he based his opinion was of two skid marks, which he attempted to photograph but could not. This was the sole "perception" that he used for locating the point of impact. He testified that he did not use the location of the debris, clearly apparent in the photographs that he took, as a factual indicator of where the point of impact was. He gave no explanation of why he did not consider the debris. He stated he thought there might have been gouge marks as a further basis for his opinion, but it had been so long since the accident, he could not remember for sure. Under these circumstances it could hardly be said that his opinion was rationally based on his perception, and it certainly could not be said that his opinion was helpful to the determination of a fact in issue. He testified as an expert, when he had never been qualified to testify as an expert. Not only did his testimony have no probative value, but it was also prejudicial, confusing, and misleading, because he was a police officer and represented "the law."
For the reasons outlined above, we accord no weight to the jury's finding as to liability. We have the record before us and we will decide this issue ourselves. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
The location of the automobiles, and especially the location of the debris, reveals that more probably than not the accident happened in the half of the highway reserved to the black Pontiac. This means that the driver of the gold Pontiac, Perkins, was in the wrong lane, and was at fault. She did not carry the burden of exculpating her driving from fault. On the other hand, the driver of the Cooper Pontiac was inexperienced. She was 15 years old and had just gotten her license to drive. She was a resident of Arizona and was driving on an unfamiliar road. The testimony was that her speed was not exceeding 20 to 25 miles an hour. Under these circumstances, had she been observing conditions as they developed, and had she had her car under control, she could have swerved and avoided the accident. She was partly to blame. We assess fault at 75% to Perkins and 25% to Cooper.

DAMAGES
On the day of the accident Ruby Fontenot was seen in the emergency room at the Humana Hospital in Oakdale by Dr. M.R. Ghanta. He hospitalized her for six days and saw her several times during the following month. She suffered generalized pain throughout this time and was put on pain medication. Dr. Ghanta found multiple injuries, including a contusion of the mandible, a concussion, a contusion of the neck, a fracture of the parietal temporal bone on the right side, a fracture of the left wrist, an evulsion fracture of the femur, and an aggravation of preexisting arthritis of the spine. He referred her to Dr. T.E. Banks, an orthopedist in Alexandria, Louisiana.
Dr. Banks saw Ruby Fontenot for the first time on September 7, 1983, and again in January the following year. Ruby was 51 years old at the time. She told him that her medical history before the accident included being seen by Dr. Osborne in Elizabeth, Louisiana, for arthritis in her neck. His x-rays showed that the wrist fracture had not yet healed. He found a condition he described as chondromalacia of the left kneecap, which was compatible with the dashboard injury that she described. Her *887 neck was continuing to bother her and he thought this was a combination of the preexisting arthritis and trauma. Her strength of grasp was diminished in the left hand. On his second examination in January 1984 Dr. Banks confirmed that there was some loss of strength of grasp, and he also noted some progressive muscle wasting in the left knee. He noted a continuation of the cracking sensation between the kneecap and the bone underneath and felt that this was definitely related to the accident. Her neck pain had cleared up and he felt that by the time of his second visit she was probably no longer suffering from an aggravation of her preexisting arthritic condition.
Ruby's mouth was injured in the accident. Her dentures were repaired by Johnny W. Strother, D.D.S. Dr. G. Michael Karam, a dentist in Kinder, Louisiana, saw her on September 19 following the accident, for pain in her lower jaw. She also complained that her dentures, which had been repaired, were not functioning properly. He saw the previous bruise and contused areas in her mouth that had been "pretty well banged up in the accident." On several visits thereafter he tried to get the dentures to fit well. It was his opinion that the blow from the accident put a strain on the temporomandibular joint, and that this accounted for her continued pain in the joint.
An oral surgeon, Bruce Phillips, saw her on January 20, 1984. She had numbness in her left lip. Over a period of time he tried unsuccessfully to regenerate the nerve, including surgery. The lip remained numb and he was of the opinion that the numbness would be permanent. The deadness he explained was much like the numbness in one's lip following dental work, only this would be permanent, and the effect would be that her left lip from the midline over would not have any feeling in it, noticeable especially when eating.
At the trial of this case, which occurred on April 30, 1990, Ruby was still complaining of the numbness.
Dr. John E. Cobb, an orthopedist in Lafayette, saw Ruby on November 12, 1986. She was referred to him by another of his patients. Her complaints were neck pain, low back pain, and knee pain. She told Dr. Cobb about the accident, and about her prior history of migraine headaches and arthritis. The main problem was with her left knee, although the right knee bothered her at times. Again to this doctor she explained the grinding at the kneecap. He diagnosed a post-traumatic cervical pain syndrome. He thought that the pain that she was describing was genuine. He also found a low back pain problem that was likewise traceable to the accident. As to her knees, he felt that the accident had produced an injury to the cartilage which resulted in some softening and that, in turn, led to the grinding symptoms and pain.
Dr. Cobb put Ruby in the hospital at Our Lady of Lourdes in Lafayette for a myelogram. The myelogram showed significant cervical stenosis, or narrowing of the spinal canal. This produced the pain about which she complained. The myelogram also showed a bulging disc at the 4-5 level in her lower back. He recommended surgery in the cervical area. This would cost an estimated $12,000, but it would probably give her some relief. He recommended further study for the low back, including a discogram. He recommended an arthroscopic evaluation of the knees. That would cost something like $4,000 or $5,000.
In 1989 she saw some doctors at Hamilton Medical Group in Lafayette. Her complaint was mainly the left knee. She was given some knee therapy in early 1989 and in March 1990 she saw Dr. James Larriviere, an orthopedist of the Hamilton Medical Group. She also saw some other doctors in the Group for headaches and back pain. Dr. Larriviere attributed her symptoms to thickening of the synovium of the knee joint. She did not have any neck problems at that time but she did have problems in the back and with the knees. She told Dr. Larriviere that the exercises that had been prescribed for her had improved her knee somewhat. She told this doctor about her visits with Dr. Cobb but explained that she stopped going to him because he recommended *888 surgery and she did not want surgery. Dr. Larriviere did not see the myelogram done by Dr. Cobb, but he felt that she had a musculo-ligamental strain of the back, which can cause pain, and he felt that her complaints of pain were sincere.
The jury gave Ruby only $3,000 in general damages, and it is this award which we find to be abusively low. We cannot rationalize this low award from the evidence. Perhaps Ruby's case suffered from her conduct as a witness: she argued with the attorneys and accused other witnesses even some doctorsof lying. The jury might have believed that she was exaggerating her complaints.
If Ruby came across unfavorably to her jury, the impression she made on her doctors was decidedly more favorable. With them she was honest and forthright. They believed her. Her complaints were for the most part objectively demonstrated. With minor exceptions, the diagnoses of all doctors was the same. She was not trying to deceive anyone. She readily admitted that she had been treated before the accident for migraine headaches and arthritis.
She testified that following the accident her back pain, both upper and lower, became worse. The medical testimony was virtually unanimous in support of an aggravation of this condition. There is no question that the chondromalacia of the left knee cap was caused by the accident and was still giving trouble seven years after the accident. She underwent two periods of hospitalization and a painful myelogram. There is no doubt that she has suffered some considerable pain over the years as a direct result of the injuries received in the accident, together with some disability, especially with regard to the left knee. In addition, the numbness of her left lip causes permanent inconvenience and irritation. Considering the genuineness of her complaints and the reality of her injuries, all of which were unanimously supported by the medical testimony, we have concluded that the lowest award that the jury could reasonably have made was $60,000. We will increase the award for general damages to that amount.
We amend the judgment in these consolidated cases to recast the apportionment of fault of the parties, 75% to Perkins and 25% to Cooper. We also amend the judgment to increase the general damages award from $3,000 to $60,000.
Earlier in these two consolidated cases, the Fontenots settled their claims against Farmer's Insurance Company of Arizona, the insurer of Cooper, for $15,000, the policy limits. The Fontenots reserved their rights against three other defendants, Government Employees Insurance Company (GEICO), Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), and Betty Perkins. GEICO was in this case in two capacities, one as the liability insurer of Betty Perkins, driver of the Fontenot car in which Ruby was a passenger, and the other as UM insurer of the Fontenots. Farm Bureau was the bodily injury liability insurer of Betty Perkins.
Because of the jury findings of liability and the amount of the jury's award, and because of the earlier settlement by the Fontenots with Farmer's Insurance Company of Arizona, the judgment rendered in these consolidated cases operated to dismiss the Fontenot suits against GEICO, Farm Bureau, and Perkins. Our amendments to the judgment on this appeal restore these defendants to the case.
Judgment is accordingly rendered in favor of Ruby Fontenot, and against GEICO, Farm Bureau, and Mrs. Perkins. Judgment is rendered finding that Ruby Fontenot's general damages were $60,000. Judgment is rendered allocating fault at 75% to Mrs. Perkins, and 25% to Mrs. Cooper. The two insurers in this case will share equally in the costs of court below and on appeal.
JUDGMENT AMENDED AND RENDERED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.