533 So.2d 1329 (1988)
Brian K. VIDRINE, Plaintiff-Appellant,
v.
MAGNOLIA LIQUOR CO., INC., and Zurich-American Ins. Co., Defendants-Appellees.
No. 87-898.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Landry & Shea, Ashton J. Landry, Lafayette, for plaintiff-appellant.
Roy & Hattan, M. Candice Hattan, Preston D. Cloyd, Lafayette, for defendants-appellees.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
DOMENGEAUX, Judge.
Plaintiff, Brian K. Vidrine sued his former employer, defendant, Magnolia Liquor Company and defendant, Zurich-American Insurance Company for worker's compensation benefits, penalties and attorney's fees which he claimed were due as a result of a work-related back injury he sustained which allegedly rendered him totally and permanently disabled. From a District Court judgment dismissing the plaintiff's suit, the plaintiff has appealed and assigned as error four rulings of the Trial Court.

FACTS
Plaintiff, Brian K. Vidrine was employed by the defendant, Magnolia Liquor Company (Magnolia), as a delivery truck operator. On February 8, 1985, while making a delivery at Port Barre, Louisiana, the plaintiff *1330 sustained a back injury after he slipped and fell on the rear door latch of the delivery truck. After receiving notice of the plaintiff's injury, defendant, Zurich-American Insurance Company (Zurich), the worker's compensation carrier for Magnolia, on February 25, 1985, began paying $159.00 per week to the plaintiff as disability compensation. Zurich also began paying for all of the plaintiff's back-injury related medical expenses. On September 16, 1985, Zurich ceased paying the plaintiff's disability benefits after it had received evaluations from several physicians who, after examining the plaintiff, concluded that the plaintiff was no longer work disabled.
Since the accident, the plaintiff has undergone numerous medical evaluations including examinations by nine (9) physicians and one (1) chiropractor. Immediately after the accident, the plaintiff notified his employer thereof and was examined by Dr. Richard Villien, an emergency room physician at Lafayette General Medical Center. X-rays taken showed no fractures or skeletal injuries and the plaintiff was released with instructions to remain in bed for fortyeight (48) hours and return for evaluation should the pain continue. Instead of returning to Lafayette General, on February 11 and 21,1985, the plaintiff saw his family physician, Dr. James Clause. Initially, Dr. Clause prescribed bed rest and muscle relaxing medication. After the February 21, 1985, exam, Dr. Clause issued a "Return to Work" certificate but recommended that the plaintiff see Dr. Fred Webre, an orthopedic surgeon, for further evaluation of his persistent lower back pain.
Dr. Webre examined the plaintiff on four (4) separate occasions: February 25, 1985, March 1, 8, and 20, 1985. The plaintiff complained of a "knot-like" pain and numbness in his back but no pain and numbness in his lower extremeties other than a general weak feeling in his legs. Dr. Webre found no fractures, dislocations or bone diseases. The plaintiff was fitted with a lumbrosacral support and scheduled for physical therapy. According to Dr. Webre's progress notes, the plaintiff's condition steadily improved and both Dr. Webre and the plaintiff agreed that the plaintiff could return to work after March 8, 1985. The plaintiff worked for five days, from March 12 through March 19, 1985, but returned to Dr. Webre on March 20, 1985, complaining of such severe back and leg pain that he was unable to continue working. Upon examination, Dr. Webre found no neurological impairment, no tenderness on palpation of the plaintiff's musculature and only slight tenderness in the area of the dorsolumbar junction over the spinous processes. Dr. Webre suggested that the plaintiff continue working using his back support, and avoid heavy lifting. Pain medication was also prescribed. The plaintiff did not return for a subsequent appointment with Dr. Webre scheduled for April 1, 1985.
On the same day as his last exam by Dr. Webre, March 20, 1985, the plaintiff sought help from Dr. David Eugster, a chiropractor. The medical records do not indicate the length of time the plaintiff was given chiropractic treatment but the treatment was apparently unsuccessful as Dr. Eugster ultimately referred the plaintiff to another orthopedic surgeon, Dr. John R. Humphries. The plaintiff saw Dr. Humphries six times, from May 5, 1985, to August 21, 1985, and showed marked improvement after undergoing physical therapy and medication. Dr. Humphries diagnosed the plaintiff's condition as "lumbar sprain" and ordered a mylogram and a CT scan, both of which showed normal results. Although physical therapy resulted in improved flexibility, on the plaintiff's fourth visit he complained that the aforementioned back and leg pain was worsening. Dr. Humphries concluded that the plaintiff did not have a ruptured disc; hence, surgery was not warranted. Dr. Humphries felt he could provide no additional treatment, so for further evaluation he referred the plaintiff to Dr. Thomas Laborde, a specialist in physical medicine and rehabilitation.
Meanwhile, by Zurich's request, on May 13, 1985, the plaintiff was examined by Dr. Lewis Meuleman, another orthopedic surgeon. After Dr. Meuleman performed a complete physical exam of the plaintiff, he *1331 stated in his written evaluation of May 16, 1985, that he would be "hard put to offer even a tentative diagnosis that would indicate any real disability." Dr. Meuleman examined the plaintiff again on September 11, 1985, along with the results of numerous tests taken previously by the aforementioned physicians. Again, Dr. Meuleman concluded that no objective findings existed that supported the plaintiff's subjective complaints of pain or that even warranted continued medical treatment.
Dr. Laborde, the physical medicine and rehabilitative specialist referred by Dr. Humphries, initially saw the plaintiff on October 10, 1985, and did not see the plaintiff again until March 6, 1986. After the initial exam showed nothing of diagnostic significance, Dr. Laborde ordered the plaintiff to have an EMG, a nerve conduction study, a bone scan, and a thermogram of the lumbar area. Dr. Laborde also recommended that the plaintiff see a clinical psychologist to receive biofeedback and muscle relaxation training. However, Dr. Laborde made no comment on the plaintiff's ability or inability to return to work. Upon notification of the aforementioned multitude of tests, Zurich informed the plaintiff that it would not pay for the suggested tests and also that it was terminating the plaintiff's worker's compensation benefits based on Drs. Humphries' and Meuleman's assesments that the plaintiff was no longer work disabled.
The plaintiff filed a complaint with the Louisiana Department of Labor, Office of Worker's Compensation (LOWC). By letter to the defendant on November 6, 1986, the LOWC recommended that Zurich continue to pay the plaintiff $159.00 per week in benefits until the plaintiff was able to return to work. In response, Zurich asked the LOWC to schedule an independent medical examination of the plaintiff and agreed to pay in advance for such an exam. Pursuant to this request, the plaintiff was examined twice in January, 1986, by Dr. Lewis Blanda, another orthopedic surgeon. Dr. Blanda found no evidence of a ruptured disc or any other objective evidence of a chronic back pain. In his evaluation of the plaintiff, Dr. Blanda stated that he could find no medical reason which would prevent the plaintiff from working as of the date of his evaluation.
On March 6,1986, the plaintiff again saw Dr. Laborde, the physical medicine and rehabilitative specialist seen in October, 1985. On this second visit, Dr. Laborde did not examine the plaintiff, but merely questioned him regarding his back ailment and asked whether the plaintiff had undergone the previously recommended tests. Dr. Laborde did not prescribe any treatment to the plaintiff on this visit. In his deposition, Dr. Laborde stated that he still believed that the additional tests were warranted because they would provide information concerning the nerves, muscles and ligaments that a CT scan, myelogram and x-rays could not provide.
In August, 1986, the plaintiff was admitted to the emergency room at University Medical Center (UMC), complaining of back and neck pains. An electroencephalogram and a CT scan taken were both normal except for a slight bulging disc at the L5-S1 level which caused a minimal impression on the anterior thecal sac. Dr. Charles Prejean, the emergency room examining physician prescribed physical therapy, aspirin and a lumbar corset. Dr. Prejean testified at the trial that he believed that the plaintiff was sincerely in pain and was work disabled. By November 25, 1986, after several months of physical therapy combined with muscle relaxation medication, the plaintiff stated at the trial that his lower back pain was worsening and that he was so depressed about his condition that he was now going to the Acadiana Mental Health Clinic.
The trial on this matter was held on December 12, 1986. After considering all the evidence the Trial Court felt that the evidence was conflicting and inconclusive. In compliance with La.R.S. 23:1123 the Trial Judge recognized Dr. Robert Morrow as an expert in the field of orthopedic surgery and ordered the plaintiff to submit to an examination. On February 17, 1987, Dr. Morrow examined the plaintiff and, thereafter, prepared an exhaustively detailed report reviewing the plaintiff's previous *1332 medical evaluations and tests and a summary of his own diagnostic impression of the plaintiff's condition. The most noteworthy aspect of Dr. Morrow's report was as follows:
My examination of the patient today reveals that he had excessive theatrical mannerisms and hyperventilation. He had intentional tremors. He walked with flexed knees and then changed to a full extended knee position when performing the heel to toe walking maneuvers. It is noted that walking with flexed knees and full weightbearing on one lower extremity at a time requires more strength of the quadriceps muscle in holding the whole body weight on that lower extremity than it does if the leg is in the extended position. However, in the seated position this patient demonstrated weakness of the quadricep muscles bilaterally when specifically tested against resistance....
The report went on to detail test after test given by Dr. Morrow to the plaintiff whereby Dr. Morrow could find no objective physical evidence which would corroborate the plaintiff's subjective complaints. In fact, the plaintiff's pain and nonmaneuverability seemed to disappear when the same muscle was tested by a less obvious method of assessment. Dr. Morrow concluded his report as follows:
I find that the patient has no objective findings to corroborate his subjective complaints of severe back pain and right lower extremity pain. On the contrary, I find that he uses contrived maneuvers, releasing of muscle groups tested against resistance, abnormal bodily positions and altered sensory preceptions in an effort to portray an extremely painful and debilitating situation. If this patient does have any significant amount of back discomfort, I can not find any objective findings to corroborate it because of the extreme amount of functional overlay that he displays. I see no reason that this patient could not return to gainful active employment at this time in a light duty situation and possibly in a moderate duty situation. I do not personally recommend any further diagnostic or therapeutic measures. However, if one still has some doubt as to the validity of his symptoms, then I think the appropriate testing to be performed would be an MRI, a thermogram, and EMG and a Cybex testing of the thoracic and lumbar extensor muscles.
After considering all of the evidence and the report of Dr. Morrow, the trial court found that while the plaintiff had suffered a work related injury, the plaintiff had failed to present clear and convincing evidence of a chronic back ailment so debilitating that he was and is unable to perform normal work activities. Additionally, the court found that there was evidence upon which the employer could and did reasonably base its opinion that the plaintiff was able to work. Hence, the employer was not considered arbitrary and capricious in denying the plaintiff's compensation benefits. The defendants, in solido, were assessed the costs of all medical experts including the examination and report of Dr. Morrow.
Subsequent thereto, the plaintiff filed a motion for a new trial based on "new and enlightning medical evidence" from a counselor from the Southwest Louisiana Rehabilitation Center who concluded that the plaintiff is totally work disabled. The Trial Court denied the plaintiff's motion for new trial.
The plaintiff has appealed the ruling of the Trial Court dismissing his claim for permanent-total disability compensation benefits and the denial of his motion for a new trial. The plaintiff has assigned as error four rulings by the district court:
(1) The Trial Court erred in denying the plaintiff's compensation benefits on the basis that the medical reports were inconclusive.
(2) The Trial Court erred in giving greater weight and emphasis to negative medical findings rather than to evidence which indicated a definite medical disability.
(3) The Trial Court erred in accepting the findings of a court appointed physician as conclusive.
*1333 (4) The Trial Court erred in denying the plaintiff's motion for a new trial in light of new evidence discovered post trial.

DISABILITY DETERMINATION
The plaintiff contends that the Trial Court erred in ruling that the plaintiff presented clear and convincing evidence that he was permanently and totally disabled. Contrary to the Trial Court's conclusion, the plaintiff argues that the medical reports were not inconclusive but instead revealed the positive existence of a serious back injury. Plaintiff argues that these positive findings are entitled to greater weight than the negative findings presented at trial. The plaintiff also argues that the Trial Court erred in accepting as conclusive the opinion and conclusions of the court appointed physician, Dr. Robert Morrow, as such a physician's findings cannot be considered conclusive.
La.Rev.Stat. Ann. § 23:1221 (West 1983) provided in pertinent part:
... compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (emphasis added)
Hence, in order for the plaintiff to have recovered, he must have proven by clear and convincing evidence that he was disabled to such an extent that he could not work. At the trial, evidence was presented of evaluations of the plaintiff by nine (9) physicians and one (1) chiropractor. Only one physician, Dr. Charles Prejean, the emergency room physician at UMC who had seen the plaintiff a year and a half after the accident, could state with certainty that the plaintiff's back injury was of such debilitating nature as to render the plaintiff unable to return to work. Dr. Laborde, the physical medicine and rehabilitative specialist who had recommended additional testing, made no comment on the plaintiff's ability or inability to return to work. The seven other physicians who examined the plaintiff, five of whom were orthopedic surgeons could find no objective physical reasons that supported the plaintiff's subjective complaints of back and lower extremities pain.
A Trial Court's factual findings concerning a work related disability should not be disturbed on appeal unless the evidence does not furnish a reasonable basis for the findings or the findings are clearly wrong. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3rd Cir.), writ denied, 514 So.2d 130 (La.1987).
A review of the entire record clearly indicates that the trial judge commited no error in concluding that the plaintiff failed to present clear and convincing evidence of the existence of a total and permanent disability. The only evidence supporting the plaintiff's alleged disability was given by Dr. Prejean, the UMC emergency room physician who did not specialize in orthopedics. Even conceding, arguendo, the plaintiff's premise that positive findings of a disability are entitled to greater weight than are negative findings, the plaintiff's positive findings were clearly outweighed by the cumulative evidence of the other examining physicians, five of whom were orthopedic surgeons, who indicated that the plaintiff was not disabled.
Additionally, a review of the reasons for judgment indicates that the plaintiff is in error in contending that the Trial Judge considered the report of Dr. Morrow, the court appointed physician, to be conclusive. The reasons state that "the medical evidence taken as a whole, particularly the report of Dr. Morrow, represents a failure on plaintiff's part to prove to this Court the existence of any disability" (Emphasis added) (T. 354). The opinion of a court appointed expert is entitled to significant weight since that expert is a disinterested party and should therefore have entirely *1334 objective conclusions. Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904 (La.App. 4th Cir.), writ denied, 478 So.2d 910 (La.1985). The Trial Judge committed no error in placing a heavier emphasis on the unbiased findings of the court appointed physician in his determination that the plaintiff failed to establish his disability. As the entirety of the evidence clearly furnishes a reasonable basis for the Trial Court's ruling dismissing the plaintiff's suit, this ruling will not be disturbed on appeal.

MOTION FOR A NEW TRIAL
The plaintiff also contends that the Trial Court erred in denying his motion for a new trial. La.C.C.P. art. 1972(2) provides that, upon contradictory motion, a new trial shall be granted when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. The plaintiff argues that post-trial examinations and evaluations conducted on February 23 and 24, 1987, by a vocational rehabilitation counselor at the Southwest Rehabilitation Center clearly established the plaintiff's work disability. The plaintiff cites Andrews v. Pine Hill Wood Co., 426 So.2d 196 (La.App. 2nd Cir.1982), writ denied, 432 So.2d 267 (La.1983), for the premise that the Trial Court erred in denying his motion because evidentiary and procedural rules in worker's compensation cases should be materially relaxed so as to assist in the discovery of the truth and protect substantial rights.
The Trial Court denied the plaintiff's motion on two grounds: (1) The plaintiff had not requested that the case be held open for this evidence despite the fact that two years had passed from the time of the accident to the trial date and (2) The evidence would not have assisted the Court in determining the existence of the plaintiff's alleged disability.
A new trial must be granted on grounds of newly discovered evidence where such evidence is not merely cumulative, but would tend to change the result of the case, was discovered after trial and could not, with due diligence, have been discovered before or during trial. Chauvin v. Chauvin, 297 So.2d 234 (La.App. 3rd Cir. 1974).
We find no error in the Trial Court's denial of the plaintiff's motion. Testimony by a vocational rehabilitation counselor as to the plaintiff's disability was merely cumulative of the evidence the plaintiff had already presented. Also, as is apparent by the Trial Court's denial of the plaintiff's motion, such evidence was not considered persuasive and would not have changed the Trial Judge's dismissal of the plaintiff's claim since this "newly discovered" evidence was outweighed by the combined conclusions of the five orthopedic specialists who examined the plaintiff and who could find no objective physical reasons for the plaintiff's alleged disability.
For the foregoing reasons, the ruling of the District Court dismissing the plaintiff's claim for worker's compensation benefits, penalties and attorneys' fees is affirmed. Costs on appeal are assessed against the plaintiff.
AFFIRMED.