GUIDRY, Judge.
This appeal arises as a result of a worker’s compensation dispute between plaintiff, Susie Poledor, and the Louisiana Insurance Guaranty Association (hereafter LIGA).[1]
The trial court found that plaintiff was temporarily totally disabled under the “odd-lot doctrine” and rendered judgment awarding plaintiff $11,789.34, representing 138 weeks of past due benefits, and ordered defendant to pay all medicals arising out of the October 8, 1984 accident as rec *207 ommended by her treating physician. Additionally, the trial court ruled that “[a]ll past amounts due and owing to the date of payment shall bear legal interest as provided by the Act”. The trial court determined that an award for penalties and attorney’s fees was not warranted.
Poledor appealed contending that the trial court erred in failing to award her penalties and attorney’s fees and in failing to find that she was totally and permanently disabled. Appellant also seeks amendment of the judgment to reflect the legal interest to which plaintiff is entitled on each payment from the date each became due until paid. LIGA answered the appeal seeking reversal of the trial court’s judgment and dismissal of plaintiff’s suit with prejudice.
FACTS
Plaintiff, Susie Poledor, was employed as a nurse’s aide by the St. Martinville Guest Home. On October 8, 1984, Poledor slipped and fell in the dining area of the home. Defendants do not dispute the fact that, as a result of her fall, Poledor sustained injury to her lower back during the course and scope of her employment.
Following the accident, plaintiff was initially examined and treated for lower back and right leg pain by Dr. O.J. Morgan. The record reflects visits to Dr. Morgan on October 8, 9 and 12, 1984. Because of plaintiff’s continued complaints of pain, Dr. Morgan referred Poledor to Dr. Kenneth Calamia, a specialist in rheumatology. Dr. Calamia treated plaintiff from October 16, 1984 until November 8, 1984. While under Dr. Calamia’s care, plaintiff was referred to and treated by Conway Geoffrey, a licensed physical therapist, on approximately 15 occasions. Thereafter, Dr. Calamia referred Poledor to Dr. John E. Cobb, an orthopedic specialist.
Poledor was examined by Dr. Cobb on November 14th and 21st of 1984. During the November 21, 1984 visit, Dr. Cobb recommended that Poledor have a myelogram, CAT scan and discogram. These tests were performed at Lafayette General Hospital. Dr. Cobb testified that a review of these tests revealed that, as a result of her fall, Poledor suffers from a posterior annular tear and an internally disrupted disc at L4-5 and resorption of the disc at L5-S1.
Poledor returned to Dr. Cobb on January 28, 1985, at which time Dr. Cobb recommended that she wait two months before considering any further treatment. Plaintiff returned to Dr. Cobb on March 25, 1985, complaining of continued back pain. On that occasion, Dr. Cobb discussed with Poledor the surgical option for treatment of her condition. Dr. Cobb told plaintiff that he did not have any other recommendation and, but for surgery, there was nothing further that he could do for her. During her treatment by Dr. Cobb, Poledor filed a claim for benefits and medicals with the Office of Worker’s Compensation (hereafter OWC). On February 27, 1985, the OWC recommended that temporary total benefits be paid to Poledor from October 9, 1984 until she was physically able to return to gainful employment and further recommended that defendants pay all related medical expenses. Defendants accepted the recommendation of the OWC and began paying weekly benefits of $85.43 and all related medical expenses.
Following the March 25, 1985 visit to Dr. Cobb, Poledor did not return to see a physician until October 1, 1985, on which date plaintiff was examined by Dr. William Meuleman, an orthopedic specialist, at the request of Transit Casualty Company. In his report to Transit Casualty Company, Dr. Meuleman summarized his opinion stating as follows:
“Quite frankly, in light of the overall clinical examination and with specific regard to the more specific and reliable test of myelogram and CT scanning, the writer does not feel that this patient has a symptomatic disc and does not feel that she would be benefitted by any type of surgical procedure and to be brutally truthful, simply on the excellent mechanics of the back would feel that it is highly probable that she could return to work.”
By letters dated May 26 and August 1, 1986, plaintiff, through her attorney, sought approval from LIGA for the surgical procedure recommended by Dr. Cobb. *208 In response, LIGA filed a motion for independent medical examination because of the conflict of opinion between Drs. Cobb and Meuleman. The trial court referred the matter to the OWC. Thereafter, LIGA filed a request for independent medical examination with the OWC. According to the record, the OWC granted LIGA’s request and scheduled a medical examination of Poledor by Dr. Thad Broussard in Baton Rouge, Louisiana, on January 5, 1987. Notice of the examination date was mailed to both Poledor and her counsel of record. Poledor did not appear for the examination nor did she make any attempt to reschedule same.
On May 25,1987, LIGA filed a claim with the OWC for modification of worker’s compensation benefits considering the opinion of Dr. Meuleman, as found in his medical report of October 1985, and because of plaintiff’s failure to attend the independent medical examination scheduled with Dr. Thad Broussard. By letter dated June 26, 1987, the OWC recommended that:
“... the indemnity (weekly benefits) portion of this claim is prescribed as per La.R.S. 28:1209 since no claim for compensation was filed with this Office until June 2, 1987 with a postmark of May 29, 1987.
The medical entitlement portion of this claim is not prescribed, and, therefore, should be paid in accordance with the Act.”
This recommendation was not rejected by either party. Defendant thereafter ceased paying benefits as of May 26, 1987.
Poledor appeared at Dr. Cobb’s office on July 1, 1987 and indicated to him that her worker’s compensation coverage was in dispute and asked that he refer her to the University Medical Center in Lafayette.
By letter dated May 24, 1988, plaintiff filed a claim for reinstatement of worker’s compensation benefits. The OWC denied this request and this suit followed.
Thereafter, Poledor sought treatment at University Medical Center on September 12, 1988 and January 25, 1989. On both occasions she was seen and released to return to normal activities.
At LIGA’s request, plaintiff was examined on January 12, 1989 by Dr. Douglas A. Bernard. In his deposition, Dr. Bernard agreed with Dr. Meuleman that plaintiff did not need surgery and could return to v/ork. Dr. Bernard testified in part as follows:
“A. ... I think from reviewing Dr. Cobb’s reports, the only thing he had ever noticed was that she had back pain. I don’t recall that he ever found any positive neurologic findings on his exams either. And the success rate of operating on somebody for pure back pain is very, very low. You can’t operate on pain and make it go away. I'm sorry. That’s why I would disagree with operating on her.
Q. What other procedure could be used to eliminate the pain other than surgery? Do you have any other suggestions?
A. I don’t have a thermometer for pain so I don’t even know if she’s really having pain. But before I would do anything, I would treat her appropriately; and the appropriate way to treat her would be to make her lose weight. And if she would lose weight, get down to 160 pounds, if she’s still having pain, then I would repeat the CAT scan and the mye-logram and I would compare it to the ones that were taken in ’84. If they show no change or no difference or no evidence of a nerve root impingement, then I would not operate on her. I would do nothing. I think she’d be perfectly capable of going back to work any time from now on ...”
PLAINTIFFS DISABILITY
The trial court determined that, as a result of her injury on October 8, 1984, plaintiff was temporarily totally disabled. Plaintiff contends that the trial court erred in this determination and should have found her to be permanently totally disabled. Compensation for permanent total disability is awardable only under the conditions set forth in La.R.S. 23:1221 which provides in part as follows:
*209 “... compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.”
In the instant case, the record clearly supports the trial court’s conclusion that plaintiff is not permanently totally disabled. Plaintiff’s treating physician, Dr. John Cobb, admitted at trial that he did not find a risk to Poledor’s back if she were to perform light duty work. Further, he candidly admitted that plaintiff was capable of performing light duty work. Dr. Meule-man indicated that it is highly probable that plaintiff could return to her regular work. Plaintiff was treated and released to resume her normal activities by physicians at UMC in September of 1988 and January 1989. Finally, Dr. Douglas Bernard testified that plaintiff could return to work at any time.
LIGA answered the appeal seeking a reversal of the trial court’s judgment urging that Poledor suffers from no disability. Although we acknowledge that this issue is close, when this record is considered in light of the well settled principles applicable to appellate review, we are unable to find clear or manifest error in the trial court’s conclusion. As we observed in Vidrine v. Magnolia Liquor Co., Inc., 533 So.2d 1329 (La.App. 3rd Cir.1988), the findings of the trial court concerning a work-related disability should not be disturbed on appeal unless the evidence does not furnish a reasonable basis for the finding or when the findings are clearly wrong. In this case, the trial court, in finding plaintiff temporarily totally disabled, obviously relied upon the testimony of plaintiff and her lay witnesses and on the opinion and recommendations of her treating physician, Dr. Cobb. This evidence furnishes a reasonable basis for the trial court’s finding and we are unable to find that the court’s reliance on such evidence was clear error. For these reasons, we will affirm the trial court’s conclusion regarding plaintiff’s disability and the extent thereof.
PENALTIES AND ATTORNEY’S FEES
Plaintiff contends that the defendants were arbitrary and capricious in not paying for her back surgery as recommended by her treating physician, Dr. John Cobb.
The record reveals that Dr. Cobb discussed the surgery option with plaintiff for the first time in the spring of 1985. Plaintiff’s next visit to a physician was her October 1, 1985 medical evaluation by Dr. Meuleman, who after performing a physical examination and reviewing plaintiff’s CAT scan, myelogram and discography, recommended against surgery. The plaintiff did not request expenses for back surgery until May 26, 1986, by which time the defendants had received the opinion of Dr. Meuleman which indicated that surgery was contraindicated and unnecessary. Rather than rely solely on Dr. Meuleman’s opinion, which was in conflict with Dr. Cobb, the defendants attempted to secure another opinion. Following timely procedural requirements, and at defendant’s request, the OWC scheduled Poledor for an examination by Dr. Thad Broussard. Pole-dor did not attend the scheduled examination and made no effort to reschedule same. Poledor did not again request surgical treatment until the fall of 1988 at which’ time, at LIGA’s request, plaintiff was reexamined by Dr. Cobb and submitted to a medical evaluation on January 12, 1989 by Dr. Douglas A. Bernard, an orthopedic specialist, who concurred with Dr. Meuleman and recommended against surgery.
The only medical expense which the defendant refused to pay was the cost of surgery. This refusal was based upon plaintiff’s disregard of the OWC’s recommendation for an independent medical evaluation and the medical opinions of Drs. Meuleman and Bernard. Under the cir *210 cumstances, we find no clear error in the trial court’s refusal to award penalties and attorney’s fees for LIGA’s refusal to pay for plaintiff’s surgery as recommended by Dr. Cobb.
Plaintiff additionally contends that the trial court erred in failing to award penalties and attorney’s fees for LIGA’s refusal to pay benefits subsequent to May 26, 1987. A review of the record reveals that LIGA paid benefits through May 26, 1987, at which time, LIGA filed a request for modification of the prior OWC recommendation. The OWC recommended on June 26, 1987 that the weekly benefits portion of plaintiff’s claim had prescribed. Plaintiff did not timely reject this recommendation. Additionally, as previously mentioned, the issue concerning plaintiff’s continued disability following termination of benefits on May 26, 1987 is extremely close. We find no error in the trial court’s refusal to award penalties and attorney’s fees for LIGA’s refusal to pay benefits subsequent to May 26, 1987.
INTEREST
Lastly, plaintiff contends that the trial court judgment should be amended to reflect that she is entitled to interest on each benefit payment from the date it became due until paid. The judgment of the trial court provides in pertinent part that “[a]ll amounts past due and owing to the date of payment shall bear legal interest as provided by the Act”. Plaintiff contends that LIGA has refused to pay interest, relying upon the wording “as provided by the Act” to refuse payment of interest on all past due amounts because, LIGA asserts, no provision for payment of interest is included in the act.
LIGA must pay legal interest on each past due benefit payment until paid. In worker’s compensation proceedings, interest on weekly compensation benefits are properly awarded from the date due until paid. Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985); Crockett v. St. Paul Ins. Co., 413 So.2d 949 (La.App. 1st Cir.1982), writ denied, 420 So.2d 447 (La.1982). We order the judgment amended accordingly.
For the foregoing reasons, the judgment of the trial court is affirmed as amended. Costs of this appeal are assessed one-half (½) to plaintiff-appellant and one-half (½) to defendants.
AFFIRMED AS AMENDED.

. Transit Casualty Company went into bankruptcy on December 3, 1985, and was replaced by LIGA, pursuant to La.R.S. 22:1376 et seq.