KNOLL, Judge.
Vermilion Farmers Co-Op, Inc. (Vermilion) and its worker’s compensation insurer, United States Fire Insurance Company (USFIC), appeal an award of weekly benefits, attorney’s fees, and penalties in favor of an injured employee. The worker’s compensation hearing officer found that the claimant, Lester Harris, was not entitled to additional medical testing, and was not disabled. Nevertheless, the hearing officer found Vermilion and USFIC arbitrary and capricious in their termination of worker’s compensation benefits, and awarded penalties, attorney’s fees and worker’s compensation benefits until the date of trial.
Vermilion and USFIC contend on appeal that the hearing officer erred: (1) in awarding worker’s compensation benefits; (2) in awarding penalties and attorney’s fees; and, (3) in assessing them with half of the court costs. We reverse and render.
FACTS
The following facts were stipulated. Harris was injured in the course and scope of his employment with Vermilion on September 22, 1989, when he slipped and fell while attempting to stand from a sitting position as he was transferring rice from one bin to another. As a result of this accident, Vermilion and USFIC paid weekly worker’s compensation benefits to Harris from September 23, 1989, through December 4, 1989. Vermilion and USFIC terminated weekly benefits, but not the expenses for medical care based on the opinion of Dr. Fred Webre, an orthopedist, that Harris was able to return to work. Pursuant to a request by Vermilion and USFIC, the Office of Worker’s Compensation ordered an independent medical examination of Harris by Dr. Clifton W. Shepherd on February 19, 1990.
Although it was stipulated that the Office of Worker’s Compensation referred Harris to Dr. Clifton W. Shepherd for an independent medical examination on February 19, 1990, the record does not indicate that a claim for worker’s compensation benefits was filed with the Office of Worker’s Compensation until September 20, 1990.
Other than Harris’s testimony, the record consists of physicians’ letters describing medical treatment rendered, and a medical deposition. Because the opinions of the various medical professionals who examined Harris are integral to the issues presented, we will detail them in the body of the opinion as we address the arguments advanced.
*1054 DISABILITY
Vermilion and USFIC contend that the hearing officer erred in its determination that Harris was entitled to worker’s compensation benefits even though it found no proven disability.
It is well settled that the worker has the burden of proving his disability to a legal certainty and by a preponderance of the evidence. Campbell v. Luke Const. Co., 465 So.2d 688 (La.1985). In every case, the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. Crawford v. Al Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977).
The following relevant facts surfaced at trial. Dr. Henry Kaufman, Jr. initially treated Harris for his injuries; the record does not detail the dates of treatment and only two medical opinions from Dr. Kaufman, dated May 27 and August 30, 1990, were introduced into evidence. Neither of Dr. Kaufman’s letters express an opinion about Harris’s ability to return to work; instead, they focus on his medical recommendation that Harris undergo a dis-cogram.
On November 27, 1989, Dr. Fred Webre, an orthopedist, examined Harris as a referral from Vermilion and USFIC. After examining Harris, obtaining X rays, and a CT scan, Dr. Webre opined that there were no medical findings which would support Harris’s complaints of pain, and Harris’s contention that he was unable to return to work.
Next, one week after termination of worker’s compensation benefits, Dr. John Cobb, an orthopedist, examined Harris on December 11, 1989, on referral from Dr. Kaufman. Dr. Cobb opined that Harris could not return to work; no objective findings were provided to substantiate his medical recommendation. On January 22, 1990, and again on April 23, 1990, Dr. Cobb opined that Harris needed a discogram to determine the appropriate course of treatment, and to resolve the question of Harris’s ability to return to work.
On February 20, 1990, Dr. Clifton W. Shepherd, Jr., an orthopedist, examined Harris as an independent medical examiner. Commenting on his findings, Dr. Shepherd stated:
“I found no objective findings [that Harris could not return to work] and he had a normal MRI of his neck and his back which indicated that his complaints probably were not valid. It was several months since his accident occurred and if this man had sustained an injury to his neck or to his back it would have been the type that you could recover from within a six-week period of time. So I would not have restricted him from work. I did, however, feel that to give him all benefit of the doubt he should have further testing done to see — to give him — to give him all benefit of the doubt as to the validity of any of his complaints.”
Accordingly, on March 14, 1990, Harris underwent a lumbar myelogram, a post-mye-logram CAT scan of the lumbar spine, a cervical myelogram, a post-myelogram CAT scan of the cervical spine, and a bone scan. On March 19, 1990, Dr. Shepherd stated:
“I reviewed all of the films and agreed that they were all normal. And as a result I came to the conclusion that I did not think his [Harris’s] complaints were valid.”
Therefore, Dr. Shepherd opined that if Harris sustained a cervical and lumbar strain, it resolved itself within six weeks of the date of the accident, and there were no medical findings which would restrict Harris’s ability to return to work. Likewise, he found no medical reason to order Harris to undergo a discogram.
The office of worker’s compensation then referred Harris to Dr. John R. Clifford, a neurological surgeon, for a second independent medical evaluation. Summarizing his medical examination of Harris on January 31, 1991, Dr. Clifford stated:
*1055 “It is my belief that this gentleman’s complaints are completely functional and put on. His examination is fraught with inconsistencies, complaining of pain in some positions when he is distracted. He can be put through these maneuvers with no particular difficulty. He fains [sic] muscle spasm, acts inappropriately when standing on one leg. He will rock from side to side in an effort to maintain his balance and in the course of doing this will laterally flex the lumbar spine up to about 45 degrees off the vertiele, yet with the patient standing with both feet on the floor he refuses to bend laterally any amount. The patient complaining of pain when he is lying flat, is negative when he is sitting and I can also have the patient sit on the bed with his legs outstretched and bend forward to place his hands on his knees and he reverses his lumbar lordosis completely whereas with him standing erect this is not the case.
I have reviewed his diagnostic studies, ... They appear to be essentially normal. I do not believe that the performance of discography in this gentleman would add anything to his care. I believe we are dealing with an individual who is playing this for all it is worth and would encourage him to return to his former occupation at the earliest opportunity.”
Based on these strong medical findings, we agree with the hearing officer’s initial determination that Harris was not entitled to undergo a discogram as part of additional testing, and that Harris did not prove that he was disabled within the meaning of the worker’s compensation act.
However, despite these findings, the hearing officer concluded that Harris was entitled to receive $13,114.24, worker’s compensation benefits until the date of trial, because “the only proper way for [Vermilion and USFIC] to terminate benefits was to file a petition with [the] Office of Workers’ Compensation and request an IME.” In reaching this conclusion, the hearing officer reasoned as follows:
“The only way to properly terminate benefits would be to file a petition with the Office of Workers’ Compensation. R.S. 23:1121 D. states that should there be a disagreement between the parties as to the fitness of the employee to return to work after being examined and evaluated by his choice of physician and the employers’/insurers’ choice; R.S. 23:1123 is to be followed. That statute establishes the procedure for an IME to be performed.”
We find that the hearing officer erred when it found that LSA-R.S. 23:1121 D and 23:1123 required the employer or insurer to seek judicial approval for termination in a pre-petition setting. Those statutes are available to the parties to resolve disagreements regarding a difference of medical opinion, and provide a mechanism if any party applies under LSA-R.S. 23:1123 for such a determination. There is no corollary statute which provides that worker’s compensation benefits can only be terminated in a pre-petition setting if the provisions of these two statutes are complied with.
With the enactment of the new Louisiana Worker’s Compensation Act there was no provision which withdrew from an employer or insurer the right to terminate the payment of compensation benefits if competent medical evidence reasonably controverted an employee’s right to benefits. Illustrative of this basic fact is the inclusion of a revised section in LSA-R.S. 23:1201, addressing penalties and attorney’s fees when these benefits are improperly terminated.
Following the logic of the hearing officer herein, penalties and attorney’s fees would be awarded only in instances in which the Louisiana Office of Worker’s Compensation was not petitioned in advance of the termination of benefits. As support ’of its holding, the hearing officer cited Constantine v. Home Ins. Co., 555 So.2d 610 (La.App. 4th Cir.1989), writ denied, 558 So.2d 588 (La.1990). The procedural setting in Constantine is clearly different from the one before us, and requires a different analy *1056 sis. We are faced in the present case with a pre-petition termination of benefits; in Constantine, penalties and attorney’s fees were awarded based on a unilateral termination of benefits by the employer after the Office of Worker’s Compensation awarded benefits for temporary total benefits.
Under LSA-R.S. 23:1331, we find that the Constantine court properly awarded penalties and attorney’s fees since the employer/insurer failed to judicially apply for a modification of the award in order to terminate benefits. Stated simply, in Constantine penalties were correctly awarded because of a special statutory provision; whereas in the present case none exists.
Accordingly, we find that' the hearing officer was clearly wrong in awarding worker’s compensation benefits to Harris from December 4, 1989, the date of the termination of benefits, to the date of trial.
Likewise, we find that the hearing officer’s imposition of penalties and attorney’s fees was in clear error. There is no testimony from Dr. Kaufman, the treating physician, that Harris was unable to work. All that we are presented with, is the initial conflicting reports of Drs. Webre and Cobb, neither of whom were the treating physicians; Dr. Webre’s opinion was rendered prior to termination and Dr. Cobb’s was issued after termination. When Dr. Shepherd independently examined Harris in February, he determined that Dr. Webre’s assessment of the claimant’s condition was correct. Dr. Clifton’s subsequent independent evaluation further buttresses the opinions of Drs. Webre and Shepherd.
The jurisprudence is firmly established that if a claimant fails to prove his disability by a preponderance of the evidence, and therefore is not entitled to disability benefits, defendants cannot be arbitrary and capricious in refusing to pay benefits. Wright v. Insurance Co. of North America, 491 So.2d 161 (La.App. 3rd Cir.1986). Accordingly, since we find that Harris failed to establish by a preponderance of evidence that he was disabled, we reverse the order of the hearing officer in which it awarded penalties and attorney’s fees.
For the foregoing reasons, the judgment of the worker’s compensation hearing officer is affirmed in part to the extent that it found that Harris was not entitled to a discogram and that he failed to prove that he was disabled. In all other respects the judgment of the worker’s compensation hearing officer is reversed and set aside. Costs of court before the Office of Worker’s Compensation and appellate costs are assessed to Harris.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.