SAUNDERS, Judge.
In this workers’ compensation ease, the hearing officer denied Nancy Broussard compensation benefits finding that her on-the-job accident was unrelated to her physical complaints after March of 1992. Insofar as we find no manifest error on the part of the hearing officer, we affirm.

ASSIGNMENTS OF ERROR

Broussard contends that the hearing officer erred in determining that she failed to prove that the accident of July 29, 1991, was causally related to her disability after March of 1992. Additionally, plaintiff contends that the hearing officer erred in finding that the defendant-employer proved that the automobile accident of February 1992, in which Broussard was involved, was an intervening and superseding cause of her disability.

FACTS

On July 29, 1991, while working as a “boxer” at Abbeville Fruit of the Loom, Nancy Broussard, plaintiff-appellant herein, alleged that she injured her neck when a box or carton weighing up to 45 pounds fell into her arms and onto the floor. She then lifted the box and set it on her work table. Soon thereafter, she felt a burning sensation travel down her neck into her left arm.
In February of 1992, on her way home from an appointment with Dr. Shepherd, Broussard was involved in a minor automobile accident. While the record does not reflect a definite date for this automobile accident, the evidence reveals that her February 1992 appointments with Dr. Shepherd were on February 4 and February 19.
Broussard continued to work, although restricted, after the accident. In March of 1992, Abbeville Fruit of the Loom discontinued medical benefits to Broussard. This suit ensued. After trial on the merits, the hearing officer found that the automobile accident of February 1992 was a superseding cause of Broussard’s problems and thus, relieved the defendant from the payment of further medical benefits to Broussard. Additionally, the hearing officer found that the medical evidence revealed that plaintiffs symptoms, which extended after March of 1992, were not caused by her July 1991 accident.

MEDICAL TREATMENT

Broussard was treated by Drs. Amy, Shepherd and Cobb. Broussard saw Dr. Brian Amy on August 5, 1991, who released her to return to work August 6,1991, with no lifting for one week.
Plaintiff again saw Dr. Amy on August 9, 1991, at which time she continued to complain of cervical strain and pain on the left side of her neck. Dr. Amy diagnosed a strained muscle and requested that she avoid lifting for another week. On August 13, 1991, Dr. Amy ordered complete bed rest for one week because plaintiffs neck pain had not resolved itself. He also ordered that she not return to work until she received a second opinion. Dr. Amy’s notes reflect that due to Broussard’s complaints of. numbness in her left arm, he would refer her back to “the company” for an orthopedic referral.
Broussard was then referred to Dr. Clifton Shepherd, an orthopedist, whom she saw from August 20, 1991, until March 23, 1992. During his first examination of Broussard on August 20, 1991, Dr. Shepherd noted her subjective complaints of neck and left shoulder pain. He also noted her complaints of numbness and tingling in her left hand and occasional frontal headaches. Her examina- *660 tíon was normal other than generalized tenderness of the left neck, shoulder and arm. He also noted slight arthritic changes at C6-7. He gave her a Cortisone injection, sent her to physical therapy and determined that she was capable of light duty.
Broussard was seen again by Dr. Shepherd on August 27, 1991, reporting significant improvement in her left neck discomfort. He gave her another Cortisone injection and allowed her to try her regular job as a folder. He did not prescribe any medication other than aspirin or Advil because she did not want to take medicine.
Broussard was next seen by Dr. Shepherd on September 10, 1991, at which time he did not find much improvement since the August 27, 1991, visit. As of September 10, she had started working as a folder for one day. She complained of a tingling sensation in her left shoulder and arm. Dr. Shepherd continued her on Advil and physical therapy and asked her to return in two weeks.
Dr. Shepherd next saw Broussard on September 21,1991, at which time he noted some improvement since her last visit. At the time, she was at work without restriction and continuing with physical therapy and Advil. He asked her to return in two or three weeks “perhaps for her final visit.”
Broussard returned to Dr. Shepherd on October 15, 1991, reporting “a lot” of improvement in her neck. She was down to two Advil a day and continuing with physical therapy. He noted slight tenderness of the left trapezius muscle and allowed her to continue to work without restriction asking her to return in three or four weeks “perhaps for her final visit.”
Dr. Shepherd next saw Broussard on November 5, 1991, at which time she told him that her neck had not improved. Due to this lack of improvement, Dr. Shepherd ordered an MRI and CT scan. He continued her on physical therapy and Advil and noted that a strain injury should have resolved in the over three months since her accident.
A CT scan of the cervical spine was taken November 21, 1991. In Dr. Shepherd’s letter after Broussard’s visit of November 26, 1991, he stated that the MRI and CT scan showed some spurs in the lower cervical region and no disc involvement. During this visit, Broussard told Dr. Shepherd that her neck was not better. Dr. Shepherd opined that her description of the accident would not be the type of activity that would cause a non-symptomatic spur to become symptomatic. He stated in his letter of November 27, 1991, that he did not think there was any relationship between her spurs and her on-the-job injury. He asked that she return in three to four weeks and prescribed medication.
Broussard’s next visit to Dr. Shepherd was on December 17, 1991, at which time Brous-sard told him that she wanted to work on a light duty basis for a period of time. Dr. Shepherd continued medication and therapy and asked her to return in one month. He stated that “[s]he should be near maximum improvement at that point.”
The record contains a letter of Dr. Shepherd’s dated December 23, 1991, wherein he states that he met with Mr. Ricky Zeno, the safety director at Fruit of the Loom, and was provided with a job description of a “fold bag boxer.” He found that this was a light duty job and could see no reason why Broussard could not perform this work. However, based upon her subjective complaints, he suggested that she be allowed a change in her activities for a brief period of time.
Dr. Shepherd next saw Broussard on January 14, 1992, at which time she stated that her neck was much better, but she still desired to continue on light duty. Dr. Shepherd continued her on therapy and light duty for two to three more weeks and felt that she would probably be released from care at that time.
During her February 4,1992, visit with Dr. Shepherd, Broussard reported some improvement and Dr. Shepherd, not finding much wrong, anticipated a full recovery. He told her to return in one month. At this time, Dr. Shepherd continued the same form of treatment and Broussard expressed a desire to stay on light duty.
In Dr. Shepherd’s report of Broussard’s February 20,1992, visit he noted that Brous-sard’s neck and left shoulder had worsened *661 since the prior Friday. He did not think her problems were related to her on-the-job injury. He also was puzzled by her complaints of back pain extending into the right leg. She was on light duty at the time of her February 20, 1992, visit and was undergoing physical therapy. At this time, Broussard also complained of numbness throughout her right arm since the prior Friday and was on leave from work. He found subjective generalized tenderness of the right posterior cervical musculature without spasm.
Again, Dr. Shepherd opined that the lifting accident she described at work was not the type of accident which would cause a non-symptomatic spur formation to become symptomatic. Therefore, he did not think that the pain she was complaining of was related to her on-the-job injury. The only solution he saw at that time was to offer her a myelogram and post-myelogram CT scan of the neck. Despite complaints of pain, he advised her to continue in some form of light duty.
Broussard was last seen by Dr. Shepherd on March 23, 1992, at which time her neck pain and headaches had worsened since the last visit. Dr. Shepherd also noted that plaintiff was complaining of right lumbar pain that started in mid-February, in addition to tenderness at the posterior cervical musculature on both the left and right side. Dr. Shepherd reviewed her myelogram and noted significant spurring. Dr. Shepherd stated in his report of March 28, 1992:
“The type of accident that she describes (a lifting episode) is not the type of accident that would cause spurs to become symptomatic. At most, it would cause a short-term temporary aggravation of her symptoms. Had she been involved in a violent accident, such as a car accident, this could potentially cause a permanent or long-lasting aggravation of symptoms from spurs. At this point, I think that she could easily have symptoms from these spurs, but I do not think that these symptoms are in any way related to her job activity. I also do not relate her insidious onset of back complaints to the job activity that she describes from many months ago. At this point, I feel that her symptoms are not related to her on-the-job activities.”
Plaintiff testified at trial that Dr. Shepherd recommended surgery on the “growths” in her neck. We do not find evidence of this recommendation in Dr. Shepherd’s reports. Broussard then testified that after Dr. Shepherd told her that she needed surgery, she asked Ms. Trudy Angelle at Abbeville Fruit of the Loom to send her to another doctor for a second opinion before surgery was done. Plaintiff testified that Ms. Angelle contacted Mr. Zeno, whose permission was required prior to sending plaintiff to another doctor. Plaintiff testified that Mr. Zeno gave permission and an appointment was made for her with Dr. Cobb.
The record reflects that Dr. Cobb examined plaintiff on March 11,1992. Dr. Cobb’s report regarding the examination of plaintiff noted that she had pain on the right side of her neck. This report states that her cervical spine MRI and CT scan demonstrated spondylosis at C4-5 and C5-6. He recommended a myelogram and kept her off work until she could return in two weeks.
Dr. Cobb next examined plaintiff on April 1, 1992, and recommended an anterior cervical fusion at C5-6 and C6-7. Dr. Cobb reported on October 80, 1992, that plaintiff had been unable to work from April 1, 1992, until October 30, 1992, pending surgery.
Finally, Broussard was examined by an independent medical examiner, Dr. R.J. Nickerson, on June 17, 1992. Dr. Nickerson found that the degree of cervical spondylitic changes present in Broussard could not have been caused by the work-related accident on July 29,1991, as described by Ms. Broussard. He assigned a 5% to 7% impairment rating based upon her symptoms alone, as the degenerative changes were pre-existing and thus, he felt they should not be considered as part of her injury. He found that she-should be able to return to her former level of employment.

DISCUSSION

The hearing officer correctly found the issues before the court to be:
(1) the extent of plaintiffs disability;
*662 (2) whether or not plaintiff was entitled to temporary total disability after March of 1992; and
(3) whether or not the defendant should be ordered to pay for the additional medical treatment and surgery recommend by Dr. John Cobb.
The hearing officer continued by stating that the plaintiff has the burden of proving by a preponderance of the evidence that there has been an accident, an injury and a disability. It was undisputed that an accident occurred. What remained was a dispute as to the extent of plaintiffs injuries and disability, if any. The hearing officer recognized the presumption, in favor of the claimant, that the work-related accident caused the claimant’s disability when the claimant was symptom-free prior to an injury. The hearing officer then stated that this presumption may be rebutted by lay and medical evidence and witnesses.
The hearing officer continued by stating:
“In this case I reviewed the medical records along with the testimony of the claimant and, in fact, the claimant did testify regarding the accident — automobile accident that she was involved in in February 1992, and she testified, as Mr. Domen-geaux pointed out, that she had no exerbation (sic) in her complaints after that automobile accident. However, a review of the medical records from Dr. Shepherd, the physician with whom she was treating at the time of the automobile accident, reflects quite by accident that there was a substantial change in her condition. And I’d like to point out to you that in the medical records of Dr. Shepherd you’ll find a report dated February 5th, 1992, and it states that Ms. Broussard was seen on February 4th, 1992. She reports some improvement. She thinks the medicine is helping. She thinks the therapy is helping. She’s encouraged to stay on light duty. Dr. Shepherd reports further that she has a full range of motion in her neck at all times and there is apparent tenderness but no spasm is noted.
“Now, I don’t have — and I don’t recall in my notes after review — that a date of the accident was given — of the automobile accident was given in Ms. Broussard’s testimony. However, you will note that for the following week — it’s dated February 20th, some several weeks after the report I just talked about — it says Ms. Broussard was seen on February 19th, 1992. I’m reading, again, from Dr. Shepherd’s notes. ‘She says that her neck and left shoulder have worsened since last Friday. She has been having complaints of numbness throughout her right arm since Friday. She is presently on leave. She says she cannot even use a mop. She is on light duty at present.’ And he goes on to talk about other things. So, while not specifically addressing a worsening of her conditions subsequent to the automobile accident, the medical reports, quite by accident, do allude to a worsening of the claimant’s conditions.”
The hearing officer’s oral reasons for judgment also noted that, although both Drs. Shepherd and Nickerson found that Brous-sard’s spurring was asymptomatic prior to the July 1991 work-related accident, they both found that the disability of which Brous-sard complained could not have caused a non-symptomatic spur formation to become symptomatic. Based upon this evidence, the hearing officer found that Broussard was owed no temporary total disability benefits after March 1992.
As to Broussard’s claim for medical expenses, neither Dr. Nickerson nor Dr. Shepherd advised Broussard to undergo an anterior cervical fusion as did Dr. Cobb. Additionally, neither Dr. Nickerson nor Dr. Shepherd found that her symptoms were related to her job activity, but instead found that her degenerative changes were pre-existing. Therefore, the hearing officer did not order the defendants to pay for an anterior cervical fusion. We find no manifest error in the ruling of the hearing officer.

SUMMARY

Broussard was never paid weekly compensation benefits because she continued to work after her July 1991 accident. Her medical bills were paid until March of 1992. Plaintiff contends that the hearing officer erred in concluding that she had failed to meet her burden of proving that her disabili *663 ty resulted from her work-related accident. She highlights the hearing officer’s reliance upon the February 1992 automobile accident as error.
The hearing officer discussed the February 1992 automobile accident, but neither relied on it nor found that it exacerbated Broussard’s symptoms. His reasons are more general insofar as he found that, based upon the medical evidence presented, her continued disability could not have been caused by her work-related accident. He stated in his oral reasons for judgment, as follows:
“And in this case it was the opinion of both Dr. Shepherd and Dr. Nickerson that the disability of which the claimant complains could not have been caused by the accident that the claimant described.”
Dr. Shepherd made this finding in his final report of March 23, 1992, at which time the defendant ceased payment of plaintiffs medical expenses. This opinion was confirmed by Dr. Nickerson in June of 1992. Under the manifest error rule mandated by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), we “may not set aside a trial court’s ... finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong_’” Although we sympathize with Broussard, we are bound to accept the hearing officer’s finding of fact that any exacerbation of Broussard’s pre-existing condition caused by the work-related accident in July of 1991 would have run its course by March of 1992 when defendant stopped paying medical benefits. As such, we find no error in the hearing officer’s ruling that the defendant owed no weekly compensation benefits or further medical benefits.
Costs of this appeal to be paid by Nancy B. Broussard, plaintiff-appellant.
AFFIRMED.