YELVERTON, Judge.
This is an appeal by Dudley Poirier and his wife Harriet, the plaintiffs, from a judgment based on a jury verdict rejecting their demands for damages in a suit brought against Everett Castillo, Castillo’s employer, and its insurer. Poirier claimed that he was standing on a highway when Castillo drove by him in a delivery truck, and that a mirror on the side of the truck hit Poirier in the head. The verdict in this ease was that Castillo was not negligent and that his conduct was not a cause in fact of Poirier’s injuries and damages. The jury was asked to find the amount of damages even if it found no liability. The damage blanks on the verdict sheet were filled in with zeroes.
The Poiriers claim the jury erred in its finding of fact and in failing to award damages to the Poiriers. We affirm.

FACTS

Some facts about the accident were not disputed, while others were. The following facts are not disputed by either the plaintiffs or defendants. On December 5,1990, Poirier went with his brother-in-law, James Dela-houssaye, to talk with Clajus Bernard. They could not find Bernard. On their way home on La. Highway 723, Delahoussaye’s vehicle stalled. They pulled to the side of the road fully onto the shoulder. Shortly thereafter, Bernard happened to come down the road in the same direction in his truck. He stopped to render assistance. He did not pull all the way off onto the shoulder. His left wheels stayed on the highway. While the drivers were working on Delahoussaye’s car, both vehicles had their flashers on.
Meanwhile, Castillo was driving down the road in the same direction in a delivery truck as part of his routine of servicing vending machines for his employer, Acadiana Bottling Co., Inc. When he was half a mile away, he noticed the vehicles on his side of the road. It was a clear day at about 10:00 or 10:30 in the morning. He saw Poirier standing outside the truck talking to Bernard who was sitting in his truck. To go around Poirier and the vehicle, he had to pass between a mail box on his left and Poirier on his right. As he drove through, he heard a thump on the right side of his truck. He looked and noticed that the mirror on the right side of his truck had collapsed. (The mirror was one which folds back when pressure is applied from the front.) Bernard sounded his horn and Castillo pulled off to the side of the road.
Delahoussaye and Poirier testified that the mirror hit Poirier in the head. Bernard did not see the mirror hit Poirier in the head, but he heard a thump. Both Bernard and Castillo saw Poirier holding his head with his hands.
The speed of Castillo’s truck and evidence of injury were disputed. Castillo testified that he had reduced his speed to five miles per hour as he drove by. Poirier maintained that Castillo’s speed was 25 miles per hour or more.
Poirier also testified, as did his wife, that there was a visible sign of injury to his head, to which a pack of ice was applied. The records at Abbeville General Hospital emergency room where Poirier went soon after the accident, indicated there was no visible £ign of any injury.
There were other disputes about Poirier’s injuries, particularly his pre-accident condition. As a result of this incident, Poirier allegedly suffered problems with his neck, left arm and lower back. He claimed he had had no neck pain before December 5, 1990, and that the pain started that day. Several months later, in 1992, Dr. John Cobb found and fused a ruptured cervical disc.
There was medical evidence that he had been having neck problems for years. Cer *1277 tain x-rays taken in 1985 and those taken in 1990 right after this accident were virtually identical. Both showed advanced arthritic changes and bony spurs. There was evidence that Poirier told doctors in 1985 he was having neck trouble. He told doctors and the jury in this case that he had no neck trouble until after the 1990 accident.
To recapitulate, the following facts favor Poirier’s side of the case. Castillo’s truck was moving close to Poirier. The mirror hit something and folded in. Castillo both heard and saw the folded mirror. Castillo also saw Poirier’s hand was on his head. Poirier testified that the truck was going 25 miles an hour and the mirror hit his head, knocking him to his knees. Bernard heard a noise then saw Poirier holding his head. Dela-houssaye said he saw the mirror hit Poirier’s head. Castillo reported to his employer that his mirror hit Poirier. Poirier went to the emergency room that same day. Both Poirier and his wife testified that there was a knot and a bruise on his head, that ice was applied, and that he had no prior neck problems. There was a subsequent operation at the C-5, C-6 level. The operating surgeon testified that there could have been an aggravating injury on December 5, 1990.
Recapitulating the testimony and evidence favoring the defendants’ side of the case, the emergency room records reported no visible signs of injury. There was evidence that Poirier suffered neck pain for at least five years before this accident. X-rays in 1985 and 1990 were virtually identical. Poirier gave a deposition before trial which consisted of over a hundred pages. At trial, he either denied many things that he said in his deposition, or testified that he did not remember saying them. Poirier admitted to the jury that he had been found guilty of falsifying an application for unemployment benefits in 1985. He also admitted that he had been found guilty of falsifying a racing application in 1987.

THE JURY VERDICT

The jury answered three interrogatories. Asked if it found from a preponderance of the evidence that defendant, Everett Castillo, was negligent and that such negligence was a cause in fact of Dudley Poirier’s injuries and damages, the response was no. The identical response was made to the second interrogatory which questioned whether Harriet Poirier, Dudley’s wife, suffered injuries and damages for loss of consortium. The third interrogatory addressed the negligence of Dudley Poirier, to which the jury answered that it did not find that Dudley Poirier was himself negligent which negligence was a cause in fact of his injuries and damages. The jury of 12 deliberated three hours. There was one dissenting vote.
It is from this verdict, and the judgment rendered and signed upon the verdict, that the plaintiffs appeal contending manifest error.

MANIFEST ERROR

A Court of Appeal may not set aside a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. When the jury’s findings are based on determinations regarding the credibility of witnesses, the “manifest error-clearly wrong” standard demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The Poiriers claim that it was clear error for the jury to have found Castillo was not negligent since Castillo admits the mirror of his truck struck something. However, the defendants claim that it was reasonable from all the evidence to conclude that Poirier’s head was not struck by the mirror. They postulate that Poirier may even have hit the mirror with his hand, deliberately.
The mirror on Castillo’s truck struck something. Castillo heard a thump and he *1278 saw that the mirror had collapsed. At trial Poirier testified he had a slight depression on his head that was not there before the accident. Poirier went to Abbeville General Hospital for treatment that evening. However, the emergency room record indicated that there was no redness or swelling or a bruise or a cut noted on his forehead.
Poirier’s explanation for the absence of a mark was that he had put ice on his head. Dr. Kate Lee, Poirier’s family physician, who saw him on December 10, five days after the accident, testified that ice could reduce swelling. Dr. John Cobb, the orthopedic surgeon who performed surgery on Poirier, testified that swelling could be reduced with the application of ice, but also stated that he would expect to see some mark on the head from such an accident on the day of the accident. Both doctors noted there were no outward physical signs of an injury when they examined Poirier.
Also, Poirier did not fall to the ground after being hit and the glasses he was wearing did not fall off. The truck that allegedly hit him was traveling 25-30 miles per hour, according to Bernard and Delahoussaye.
Poirier’s deposition was introduced at trial. Many statements about the incident he made at trial were in conflict with what he said at his deposition. Poirier explained his deposition testimony inaccuracies as probably affected by elevated blood sugar on the day he gave it.
Poirier’s credibility was attacked in other ways. The jury heard that Poirier had been convicted of giving a false statement on one occasion and convicted of failing to disclose a material fact to obtain unemployment benefits on another occasion.
Delahoussaye was the only other person besides Poirier who testified that he actually saw the mirror hit Poirier in the head. It is possible the jury believed his testimony was influenced by his relationship as Poirier’s brother-in-law.
The jury could have chosen to discredit both the testimony of Poirier and his brother-in-law. Also, the jury could have believed that Poirier hit the mirror with his hand, knowing that there were no physical manifestations of an injury to the head when Poirier arrived at the emergency room. The answers to the interrogatories on the verdict form reflected specific findings on no injuries, and logically point to credibility determinations by the jury.
Additionally, the jury could have found that even if the mirror on Castillo’s slow-moving truck actually made contact with Poirier’s head, there were no injuries. Poirier claims that as a result of the accident his neck, left arm and lower back were injured. After the accident, he was well enough that it was not necessary for an ambulance to be called. He was able to talk to Castillo and exchange names, addresses and phone numbers. Poirier then went home with his brother-in-law before going to the emergency room. The medical testimony revealed that the condition in Poirier’s neck was not necessarily caused by the accident. X-rays taken at the hospital on December 10, 1990, revealed narrowed disc spaces and some arthritic changes. X-rays taken on December 28 showed he had osteoarthritis and cervical stenosis of the cervical spine. Dr. Lee was uncertain whether these problems were secondary to trauma, or just arthritis. She was not sure what was causing the narrowing in the disc interspace. She stated that degeneration in the spine can cause the disc spaces to narrow. She described osteoarthritis as a condition in which the spinal canal has vertebrae which grow additional bone which narrows the spaces. Osteoarthritis would have existed before the accident. Dr. Lee also found that Poirier had a lot of arthritis in his lower back with L-5 also narrowing.
Although Poirier told Dr. Lee that he had no previous neck problems, it was revealed that he had neck problems a few years earlier when he was in the oil field. It was also revealed that he was involved in a blowout accident with resulting disc involvement in 1966.
*1279 Dr. Cobb first saw Poirier on June 12, 1991 on the recommendation of Dr. Lee. Poirier had complaints of pain in his neck, left arm and lower back. Dr. Cobb also found he had a minor degree of degeneration in the neck and spurring and narrowing of the disc. He did not really concentrate on the lumbar area. Dr. Cobb performed surgery in which he removed a ruptured disc and removed bone from around the nerve that was causing the space to be narrowed and fused the space.
Dr. Cobb also stated that the bony overgrowth on the x-rays taken in December, seven days after the accident, could not have developed in seven days. He examined x-rays taken in 1985 and found that they also revealed that Poirier had bony overgrowth and impingement on the nerve foramina at that time. Poirier’s chief complaint was radiating pain down the left arm which caused this impingement on the nerve foramina. The purpose of the surgery was to correct this problem, and it did, according to Dr. Cobb, because Poirier claimed relief of symptoms afterwards. He was discharged by Dr. Cobb in December 1991.
Dr. Cobb also stated that Poirier’s spine was severely degenerated through arthritic changes. He testified that patients with this condition can develop symptoms without having any incident of trauma and the only way to tell if Poirier was having symptoms was to take Poirier’s word for it. Dr. Cobb could not put a date on when Poirier’s condition became aggravated, but relied on what Poirier told him.
After a review of this medical evidence, we find that it would be a permissible view of the evidence for the jury to conclude that the nerve impingement problem that Poirier was having existed before the accident. If it found Poirier was not a credible witness, then it could also conclude that Poi-rier was experiencing problems before the accident. This is especially true since x-rays in 1985 showed that Poirier had the nerve impingement problem at that time. Also, Poirier’s neck had been injured in 1966 and earlier in the oil field, but in his deposition he stated that he had never hurt his neck before this accident.
From the above discussion, and from the jury’s specific findings, there can be little doubt that the jury made credibility determinations. From the wording of the interrogatories, the jury could have found either that the plaintiffs did not prove liability, or that they did not prove damages, or that they proved neither.
The jury might also have concluded that there was no accident. Poirier tried to put the blame on Castillo for not swerving until he was 50 feet away, and for trying to thread the needle between the mail box on his left and the standing plaintiff on his right. Poirier never explained why he just stood there and got hit. The jury was carefully instructed on comparative fault. By the interrogatories given to them, they had every opportunity to apportion fault. Finding no fault on anybody’s part is an indication that they did not believe Poirier’s head was hit by the mirror. There is an old rule, falsus in uno, falsus in omnibus, which permits (though it does not require) the finder of fact to reject the testimony of a witness in its entirety if the circumstances of the case indicate a false statement was made on even one relevant or pertinent matter. Brown v. State Mut. Life Ins. Co., etc., 377 So.2d 355 (La.App. 3d Cir.1979). In this case Poirier made several statements which conflicted with his own pri- or statements, as well as other evidence in the record. These conflicts existed both in the liability and in the damages aspects of the trial. Also, he suffered the degradation of having had to admit that within ten years of the trial, he had been convicted of crimes involving dishonesty or false statements. The evidence was allowed by the trial judge, who found that the probative value of the evidence outweighed its prejudicial effect. La.Code Evid. art. 609.
The plaintiff on this appeal urges strenuously that there is so much objective evidence of an accident and an injury that we should find manifest error or clear wrong *1280 ness even in a finding purportedly based upon a credibility determination (as we think this jury decision was.) Because there is indeed considerable objective evidence to support plaintiffs’ case, we have carefully studied this record. We simply cannot say on this record that this trial jury was clearly wrong.
The judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.
SAUNDERS, J., dissents and assigns reason.