JiLABORDE, J.
The plaintiff, June Jefferson, seeks to recover damages resulting from an accident which occurred while she was shopping at the K-Mart store in New Iberia, Louisiana. Named as defendant is K-Mart Corporation, the owner of the retail facility where the accident occurred. After a trial on the merits, the jury awarded Ms. Jefferson $13,-000.00 in general and special damages but found her thirty percent at fault in causing the accident. She has appealed the verdict and contends that the jury erred in finding her at fault to any degree in causing the accident. She also seeks an increase in the award for damages.
JaDISCUSSION OF RECORD
In late November or early December of 1991, June Jefferson and her friend, Donna Smith, went to the K-Mart store in New Iberia, Louisiana, to shop for Christmas decorations for Ms. Smith. As they approached the Christmas display aisle, the plaintiff saw a K-Mart employee working on a tall ladder in the adjacent aisle. The employee, John Funk, was in the process of running an extension cord above the ceiling tile from one area of the store to another. When Ms. Jefferson saw him, he was standing on the ladder with his hands above his head working the extension cord through an open ceiling panel.
Funk testified that he saw the plaintiff and Ms. Smith before they entered the adjacent aisle and asked them to step back until he finished his work. The plaintiff denies having heard Funk’s warning. Ms. Jefferson and Ms. Smith then entered the Christmas display aisle to view the merchandise. While *38 they were in the aisle, Funk’s ladder shifted as he was repositioning a tile in the ceiling. When the ladder shifted, Funk lost his balance and lost control of the ceiling tile he was holding. He attempted to guide the ceiling tile over the shelving separating his aisle from the one occupied by Ms. Jefferson and released the tile at a point where he believed its release was least likely to injure himself or others. In the process, he knocked some of the merchandise off of the shelving separating the aisles. As he lost his balance, Funk shouted a warning to a co-employee, Gloria Prince, who had just arrived at his aisle to stock merchandise. Ms. Jefferson also heard the warning and instinctively flinched. She was struck in the back of the neck by a falling object. While it is not disputed that an object struck Ms. Jefferson, the record is not clear as to what the object was.
^Immediately after the incident, Funk and another K-Mart employee went over to the aisle occupied by Ms. Jefferson to retrieve the tile. Either Ms. Jefferson or Ms. Smith informed them Ms. Jefferson had been struck by an unspecified object but that she was not injured.. Because no injury was claimed, neither an accident nor an incident report was prepared concerning the event.
The plaintiff and Ms. Smith continued to shop for approximately ten more minutes, but Ms. Jefferson claims that prior to leaving the store she began to have headaches and feel pain at the base of her neck. She borrowed two aspirins from Ms. Smith who dropped her off at her home. According to Ms. Jefferson the pain did not subside, and on January 9, 1992, she contacted K-Mart and requested that the defendant send her to a doctor. K-Mart refused to authorize the medical treatment but asked the plaintiff to come in and give a statement concerning the event.
The first time the plaintiff sought medical treatment was in mid-January of 1992 when she brought her son to Dr. Andre Perron for treatment. She contends that limited access to medical care discouraged her from seeing a physician sooner. Dr. Perron examined Ms. Jefferson for a multitude of complaints, s^pst of which were unrelated to the accident. With respect to the accident complaints, he found no objective signs of injury or trauma and diagnosed her condition as a cervical strain or contusion or both. She was next examined by Dr. Perron on February 12, 1992, for numerous complaints, including neck pain. Dr. Perron maintained his diagnosis of cervical strain, but the diagnosis was based entirely on the plaintiffs subjective complaints. It was his opinion the symptoms would dissipate with time, and he did not find it necessary to prescribe medication or to refer Ms. Jefferson to any specialists. Apparently he did not see her again after February 12, 1992.
ROn February 13, 1992, Ms. Jefferson began to see Dr. Ernest Lisenby, a New Iberia, Louisiana chiropractor. It appears that Ms. Jefferson selected Dr. Lisenby in part because he did not require his patients to pay in advance for their care. Dr. Lisenby concluded that Ms. Jefferson had sustained ligament damage and a floating bone chip in her back. He released Ms. Jefferson from his care on June 17, 1992, concluding that she had reached maximum medical improvement from a chiropractic standpoint. Dr. Lisenby also noted in a report of June 18, 1992, that Ms. Jefferson’s continuing pain and discomfort presented “a possible need for orthopedic attention or surgery.”
Dr. John Cobb, an orthopedic surgeon, began treating the plaintiff on September 21, 1992, pursuant to a referral by her attorney. Between September 21, 1992, and December 27, 1993, he saw the plaintiff on three occasions. Based upon his examination of the plaintiff, Dr. Cobb concluded that Ms. Jefferson’s problems could not be relieved surgically, and he recommended physical therapy. After physical therapy also proved unhelpful, Dr. Cobb referred the plaintiff to Dr. Sanjib Jindia, an anesthesiologist with a clinical sub-specialty in pain management.
Ms. Jefferson first saw Dr. Jindia on January 11, 1994. Dr. Jindia recommended a series of trigger point injections in conjunction with physical therapy. She underwent several injections on February 1, 1994, and March 2, 1994, which she testified provided immediate relief. However, she also testified that the neck pains returned after a couple of *39 weeks. Notwithstanding Dr. Jindia’s opinion that continuous injections in conjunction with therapy would alleviate the complaints of most persons suffering with Ms. Jefferson’s problems, Ms. Jefferson declined to undergo additional cortisone injections due to a combination of fear, pain, and |sexpense.
At the request of the defendant, the plaintiff was also examined by Dr. Douglas Bernard, an orthopedic surgeon. After examining Ms. Jefferson on one occasion and reviewing the results of an MRI, Dr. Bernard concluded that the plaintiffs medical condition was essentially normal.
OPINION

Apportionment of Fault

The first issue is whether the jury erred in assessing Ms. Jefferson with thirty percent fault. An appellate court has a constitutional duty to review facts and determine whether the facts support the fact finder’s conclusions. Welch v. Winn-Dixie La., Inc., 94-2331 (La. 5/22/95), 655 So.2d 309 [citing Ambrose v. New Orleans Police Dep’t. Amb. Serv., 93-3099 (La. 7/5/94), 639 So.2d 216]. However, an appellate court should not disturb a fact finder’s reasonable evaluations of credibility and reasonable inferences of fact where conflict exists in the testimony or the facts. Id. [citing Stobart v. State of La. Through Dep’t. of Transp. and Dev., 617 So.2d 880 (La.1993) and Rosell v. ESCO, 549 So.2d 840 (La.1989) ]. Even if the appellate court would have decided differently, the fact finder’s determinations should be affirmed unless clearly wrong or manifestly erroneous. Id.
Furthermore, the manifest error-elearly wrong standard extends to review of a fact finder’s apportionment of fault. Watson v. State Farm Fire & Cos. Ins. Co., 469 So.2d 967 (La.1985). In apportioning fault, various factors may be considered, including:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any | (¡extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Id. at 974.
Ms. Jefferson admits that prior to entering the Christmas display aisle, she noticed Mr. Funk on top of the ladder doing “[s]omething up towards the ceiling.” Under the Watson factors, the jury could have concluded that Ms. Jefferson was aware of the danger involved in entering the Christmas display aisle; that it is not uncommon for a person on a ladder to lose his balance or drop or knock over objects in the process; and that an object dropped or knocked off of a shelf could have hit her, even though she was in an adjacent and not the immediate aisle. The jury could also have concluded that Ms. Jefferson participated in creating the risk by choosing to enter the Christmas display aisle after being warned not to do so by Funk and despite knowing the potentially dangerous situation. Additionally, since Ms. Jefferson’s purpose for entering the aisle was to shop, the jury could have concluded that there were no compelling circumstances which required Ms. Jefferson to enter the aisle and place herself in a potentially dangerous situation. While Ms. Jefferson’s actions may not have been the direct cause of the accident, we do not find the jury’s assessment of thirty percent fault to her clearly wrong. Therefore, we must affirm the jury’s findings in this regard.

Damages

The jury was presented only one interrogatory concerning the amount of damages. This interrogatory did not differentiate between general and special damages. In answering the interrogatory the jury awarded Ms. Jefferson a total of $13,000.00 for all of her damages, general and special. On appeal she asserts that the medical expenses alone totalled $8,676.58 and that a total general damages award of |7$4,323.42 is inadequate.
We agree that if the jury found all of the medical expenses submitted to be causally connected to the accident the general damage award is woefully inadequate. However, this issue too is subject to a clearly *40 wrong or manifestly erroneous evaluation. Rosell, 549 So.2d 840. In analyzing this issue we must review the entire record and if there are two permissible views of the evidence, the fact finder’s choice must be accepted. Id.
The medical testimony reveals that Dr. Perron’s diagnosis was of a minor injury which was not severe enough to warrant either prescription medicine, additional testing, or referral to another physician. The remaining medical treatment providers who saw Ms. Jefferson generally based their conclusions concerning her condition on subjective complaints. The histories provided to the various medical treatment providers do not describe a person in intense pain and suggest only complaints of periodic neck pain. The medical tests administered were within normal limits. Her testimony was that she has been able to shop, clean her house, move furniture, carry heavy things, and mow grass. Apparently her only complaint is that since the accident she occasionally has pain when she turns her head to the left. Her primary fear seems to relate to what may happen with her neck as she gets older. We cannot conclude that the award of $13,000.00 for general and special damages combined is manifestly erroneous or clearly wrong.
DISPOSITION
For the foregoing reasons, we affirm the judgment and assess costs of this appeal to Ms. Jefferson.
AFFIRMED.
AMY, J., concurs.
SAUNDERS, J., dissents and assigns reasons.
THIBODEAUX, J., dissents for the reasons assigned by SAUNDERS, J.