713 So.2d 613 (1998)
Ernesto A. NAVARRO, III, Plaintiff-Appellee,
v.
ARIES MARINE CORPORATION, Defendant-Appellant.
No. 97-1630.
Court of Appeal of Louisiana, Third Circuit.
April 29, 1998.
*614 Raymond M. Allen, William J.F. Gearheard, Lafayette, for Ernesto A. Navarro, III.
Douglas William Truxillo, Robert S. Hinyub, Lafayette, for Aries Marine Corp.
Marc W. Judice, Lafayette, for John Cobb, M.D.
Before YELVERTON, COOKS and SULLIVAN, JJ.
YELVERTON, Judge.
Ernesto Navarro suffered a back injury while working as a seaman aboard a vessel owned by his employer, Aries Marine Corporation (Aries). Maintenance and cure were paid by Aries, and Aries was still paying maintenance at trial. The issue in this case is whether Aries is liable for cure payments resulting from procedures performed by Mr. Navarro's treating physician, Dr. John Cobb, an orthopedic surgeon. Aries argues that the treatment was not medically necessary. The trial court found that the treatment, which successfully relieved the patient of his back pain, was medically necessary and ordered *615 Aries to pay the medical expenses. That finding is contained in the following portion of the trial court's reasons for judgment.
The court will not detail every medical opinion offered in this case. Suffice it to say, that no doctor disputes Plaintiff was having constant back pain at the time Dr. Gidman released him for work. None of the treatment afforded to Plaintiff by Defendant's doctors were effective. The surgery performed by Dr. Cobb has been successful. This is a case of a difference in medical treatment but the excellent result convinces the Court that the medical treatment of Dr. Cobb was medically necessary to relieve Plaintiff of his painful condition. No doctor has indicated Plaintiff was not truthful and Dr. Gidman admitted that Plaintiff had medical problems with his back when he first saw him and when he last saw him which prevented him from returning to his normal work. Finally, Dr. Gidman was unable to account for the excellent recovery of Plaintiff after his surgery except to say he was "lucky".
As a result, the Court finds the testimony of Dr. Cobb to be the most credible of the medical opinions given. Additionally, the use of a discogram [sic] as a tool by Dr. Cobb, although controversial, is not medically recognized as useless in view of the many articles introduced, the failure of the medical society to take a stand against it and the continued teaching in some medical schools (Tulane) of its correct use.
Aries appeals that decision. Aries makes three assignments of error which we will address below. After reviewing the record in its entirety, we find no manifest error in the trial court's finding that Dr. Cobb's testing and treatment was medically necessary. We find no merit to Aries' assignments of error, and for the following reasons, we affirm the trial court's judgment.

Assignment of Error 1
Aries' first assignment of error is:
Judge Aaron erred in granting Dr. Cobb's motion to quash the subpoena duces tecum requesting that Dr. Cobb produce records from his office indicating the number of patients he has treated over the last five years who were referred to him by attorneys, the number of surgeries he has performed on such patients (by percentage) and the total amount of income he received from attorneys who referred patients to him over that same period.
Aries relies on this circuit's opinion in Rowe v. State Farm Mut. Auto. Ins. Co. 95-669 (La.App. 3 Cir. 3/6/96); 670 So.2d 718, writ denied 96-0824 (La.5/17/96); 673 So.2d 611, as its license to discover the above subpoenaed information from Dr. Cobb. Aries argues that it needed that information to prepare for meaningful cross-examination of Dr. Cobb and to show Dr. Cobb's bias.
It was Dr. Cobb, not the plaintiff, who filed the motion to quash the subpoena duces tecum. Dr. Cobb gave several reasons for opposing the subpoena. His arguments were based on relevance (Dr. Cobb was the treating physician); privilege (patient identity and information may not be divulged); burden (the doctor's clinic has over 13,000 patient records that are not computerized); judge trial (a judge, not a jury, was to determine the credibility of Dr. Cobb); and on the fact that diskography has scientific proponents as well as opponents.
We start with the observation that Mr. Navarro was not referred to Dr. Cobb by his attorney. The evidence was that Mr. Navarro had heard about Dr. Cobb from friends and asked his family physician to refer him to Dr. Cobb. Regardless of that fact, we would still not find error in the trial court's determination to quash the subpoena duces tecum. The trial judge found that the plaintiff was in constant pain and is now recovered. It is difficult to argue with the cause and effect relationship between Dr. Cobb's treatment, diagnosis, and surgery, and the plaintiff's recovery. On these facts, the trial court must have decided that the allowance of such an extensive review of Dr. Cobb's records would have unjustifiably imposed an undue burden on the doctor. La. Code Civ.P. art. 1426(A)(1) allows the trial court to order that "discovery not be had" if such would impose an "undue burden or expense." Furthermore, under La.Code Civ.P. art 1354, the trial court "in its discretion may *616 vacate or modify the subpoena if it is unreasonable or oppressive."
In Rowe, 670 So.2d 718, this court held that the trial court abused its discretion in not allowing the plaintiff to subpoena, within limits, certain financial records of the defendant's expert orthopedist in order to establish the expert's possible bias. While that case contains a significant number of distinguishing features, it is only necessary that we point out a few to show it is not controlling under the facts before us. First, the court's reasoning in Rowe, 670 So.2d at 724-725, discloses that the concern was about a "retained expert" whose "apparent objectivity" might unduly influence a jury. The court believed that the trier of fact, a jury, might need to know if bias existed.
The expert in Rowe was not the plaintiff's treating physician but an expert retained by the defendant who reviewed the plaintiff's case only three weeks or so pretrial. In this case, Dr. Cobb was Mr. Navarro's treating physician, not a retained expert. Further, in this case the trier of fact is an experienced judge, not a jury.
Nevertheless, Aries argues that "[t]he situation before this court is nearly identical to that presented by Rowe ...." Aries cited 31 reported decisions[1] of this court which it argued demonstrated Dr. Cobb's "track record" and revealed excessive bias in favor of personal injury claimants, and a propensity to order diskograms and surgery.
We do not interpret Rowe to mean that every expert medical witness in every case will be subject to a subpoena duces tecum of unrelated medical records for the purpose of cross examination. We have examined the 31 cases cited by Aries and said to reflect Dr. Cobb's "track record". Of the 31, only two indicate that an attorney referred the plaintiff to him. Eight referrals were from other physicians; in one he met the patient while treating the patient in the emergency room; one patient chose Dr. Cobb on his own; one was referred by another of Dr. Cobb's patients; the opinion does not disclose in the remaining 18 citations how the parties became Dr. Cobb's patients. Dr. Cobb recommended surgery 13 times out of the 31 listed cases. In six cases he recommended conservative treatment. Three times he stated there were no objective signs of injury or that the plaintiff could go back to work without restrictions. In the remaining *617 nine cases there is no indication of the treatment. Dr. Cobb was the treating physician in 24 of the 31 cases. In the other seven he was giving a second opinion for the benefit of other physicians.
While in the majority of the 31 cases Dr. Cobb testified on behalf of claimants, he did not always testify in a manner that was beneficial to the claimant. For example, in Poirier, he testified that while the plaintiff had serious injuries, the cause of the injuries was very likely not the negligence of the defendant. Also, in Lewis, while he recommended disability based on the claimant's subjective complaints of pain, Dr. Cobb testified that he could find no objective sign of an injury. In Broussard, Dr. Cobb testified he performed a diskogram that revealed no disk injury existed. He testified that he thought the claimant could return to work. In Fusilier and in Saucier, he agreed with Dr. James McDaniel that the claimants had no objective signs of injury.
We also found and examined 15 other opinions[2] from this circuit where Dr. Cobb was mentioned. In none did Dr. Cobb recommend surgery. In most he recommended physical therapy or other conservative treatment. In Jefferson v. K-Mart, an attorney referred the plaintiff to him. Dr. Cobb recommended physical therapy and said surgery would not be beneficial. In six of those cases the plaintiff was referred to Dr. Cobb by other doctors. Only once was it shown that an attorney referred the patient. The others did not indicate who referred the plaintiff to Dr. Cobb.
This court held in Rowe that it was an abuse of the trial court's discretion not to issue the subpoena duces tecum for Dr. James McDaniel's records, based on the circumstances presented in that case. We find that the circumstances presented in the present case are not comparable to those presented in Rowe. It was not an abuse of the trial court's discretion to quash the subpoena duces tecum in the present case.

Assignment of Error 2
By this assignment Aries claims "Judge Aaron erred in allowing in testimony and evidence regarding the discogram [sic] performed by Dr. Cobb." Aries argues that such evidence was inadmissible because, according to Aries, the diskogram is not "a scientifically proven and widely accepted procedure in the medical community."
With limited exceptions, all relevant evidence is admissible. La.Code Evid. art. 402. La.Code Evid. art. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This case involved the determination of whether the diskogram and subsequent surgery performed by Dr. Cobb were medically necessary so as to entitle Mr. Navarro to cure payments from Aries. Necessarily, evidence of the diskogram had to be admitted to show what it is, whether it is acceptable, whether it was needed in this case, etc. This assignment of error lacks merit.

Assignment of Error 3
Aries' last assignment is that "Judge Aaron erred in determining that Dr. Cobb's diskogram and subsequent surgery performed *618 on plaintiff by Dr. Cobb was medically necessary." The thrust of Aries' argument is that diskography is a "controversial" procedure and should not have been relied on by Dr. Cobb in determining that Mr. Navarro needed surgery. In addition, Aries argues that the weight of the medical testimony at trial, and the credibility of the witnesses, favored a determination against a finding that the surgery was medically necessary.
Our review of this assignment of error is based on the manifest error standard of review. See Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/1996); 676 So.2d 89. We therefore give great discretion to the trial court's findings of fact and determinations of credibility of witnesses.
"Cure" is the payment of medical expenses incurred by a seaman who suffers an injury while in the service of a vessel. Huff v. Compass Nav., Inc., 522 So.2d 641 (La.App. 4 Cir.), writ denied, 526 So.2d 797 (La.1988). It involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman until he reaches maximum cure. Taylor v. Mutual of Omaha Ins. Co., 520 So.2d 1122 (La.App. 3 Cir.1987). "`Maximum cure' is reached when it appears that `the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition.' " Id. at 1124. Aries does not argue that Mr. Navarro has or has not reached "maximum cure." It simply argues that the treatment rendered by Dr. Cobb, being controversial and contrary to the opinion of several other physicians, was medically unnecessary, and therefore Aries should not be liable for it.
There was much evidence presented at trial, including expert testimony and articles and scientific studies reported in medical journals, that both supports and rejects diskography as a valid medical procedure. The controversy surrounding diskography was put this way by Dr. Gidman: "Diskography, if you look at the literature is an extremely controversial study; and there are proponents of it that are very vocal about the use of it, and there are opponents that are very vocal about the disuse of it." Aries presented several experts that are very much against diskography. However, there was sufficient evidence for the trial judge to conclude that Dr. Cobb's opinion-that diskography is a useful medical procedure and that it was medically necessary to perform one on Mr. Navarro to determine the source of his disabling pain-was reasonable. We repeat language from the trial judge's reasons for judgment "Suffice it to say, that no doctor disputes Plaintiff was having constant back pain.... None of the treatment afforded to Plaintiff by Defendant's doctors were effective. The surgery performed by Dr. Cobb has been successful. This is a case of a difference in medical treatment...." The trial court's opinion that Dr. Cobb's treatment of Mr. Navarro, including the diskogram and subsequent surgery, was medically necessary is supported by the facts and not manifestly erroneous.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Aries.
AFFIRMED.
NOTES
[1] Dauzat v. Canal Ins. Co., 96-1261 (La.App. 3 Cir. 4/9/97); 692 So.2d 739; Aycock v. Gulf Coast Transp., Inc., 96-1471 (La.App. 3 Cir. 4/2/97); 692 So.2d 1334; Gallien v. Winn-Dixie, 96-832 (La.App. 3 Cir. 12/11/96); 685 So.2d 531; Broussard v. Wal-Mart Stores, Inc., 96-513 (La.App. 3 Cir. 11/6/96); 682 So.2d 894, writ granted & vacated, 96-2931 (La.11/7/97); 703 So.2d 29; Este' v. State Farm Ins. Companies, 96-99 (La. App. 3 Cir. 7/10/96); 676 So.2d 850; Ramsey v. Cash and Carry Foods, Inc., 95-544 (La.App. 3 Cir. 11/2/95); 664 So.2d 511; Mose v. Ashy Const. Co., 95-359 (La.App. 3 Cir. 10/4/95); 663 So.2d 284; Borel v. Dynamic Offshore Contractors, 94-1372 (La.App. 3 Cir. 4/5/95); 653 So.2d 115, writ denied, 95-1150 (La.6/16/95); 655 So.2d 335; Andrus v. State Farm Mut. Auto. Ins. Co., 94-161 (La.App. 3 Cir. 12/28/94); 650 So.2d 275, writ granted, 95-801 (La.5/12/95); 654 So.2d 341, reversed in part, 95-801 (La.3/22/96); 670 So.2d 1206; Guillory v. City of Crowley, 93-1060 (La.App. 3 Cir. 8/31/94); 643 So.2d 196, writ denied, 94-2470 (La.12/9/94); 647 So.2d 1113; Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94); 636 So.2d 1177; Briscoe v. Jerry's Furniture, 93-1030 (La.App. 3 Cir. 4/6/94); 635 So.2d 550; Broussard v. Abbeville Fruit of the Loom, 93-1015 (La.App. 3 Cir. 4/6/94); 635 So.2d 658; Poirier v. Acadiana Bottling Co., Inc., 93-919 (La.App. 3 Cir. 4/6/94); 635 So.2d 1275, writ denied, 94-1473 (La.9/23/94); 642 So.2d 1294; Guillotte v. Dynamic Offshore Contractors, 628 So.2d 234, (La.App. 3 Cir.1993); Devall v. Begnaud, 617 So.2d 1286, (La.App. 3 Cir.1993); Harris v. Vermilion Farmers Co-op., Inc., 610 So.2d 1052, (La.App. 3 Cir.1992); Fontenot v. Cooper, 599 So.2d 883 (La.App. 3 Cir.), writ denied, 604 So.2d 1305 (La.1992); Landry v. Central Industries, Inc., 592 So.2d 478, (La.App. 3 Cir.1991), writ denied, 593 So.2d 381 (La.1992); Poledor v. St. Martinville Guest Home, 587 So.2d 206, (La.App. 3 Cir.1991); Hanks v. Grey Wolf Drilling Co., 574 So.2d 531, (La.App. 3 Cir.1991), writ denied, 577 So.2d 32 (La.1991); Fusilier v. Liberty Rice Mill, Inc., 569 So.2d 1050, (La.App. 3 Cir.1990); Hopkins v. Travasos, 569 So.2d 1056, (La.App. 3 Cir.1990); Broussard v. Grey Wolf Drilling Co., 562 So.2d 1006, (La.App. 3 Cir.), writ denied, 567 So.2d 102 (La.1990); Brown v. Commercial Union Ins. Co., 548 So.2d 954, (La.App. 3 Cir.1989); Menard v. MultiService Corp., 546 So.2d 952, (La.App. 3 Cir.1989); Campbell v. Luke Const. Co., 543 So.2d 1032, (La.App. 3 Cir.1989); Lewis v. Wal-Mart Stores, Inc., 525 So.2d 93 (La.App. 3 Cir.), writ denied, 525 So.2d 1047 (La.1988); Latiolais v. Jernigan Bros., Inc., 520 So.2d 1126, (La.App. 3 Cir.1987); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033, (La.App. 3 Cir.1986); Lee v. National Tea Co., 378 So.2d 134, (La.App. 3 Cir.1979).
[2] Simon v. Winn-Dixie Louisiana, Inc., 95-1635 (La.App. 3 Cir. 2/19/97); 689 So.2d 713, writ denied 97-796 (La.5/1/97); 693 So.2d 736; Louisiana Workers' Compensation Corp. v. Louisiana Workers' Compensation Second Injury Bd., 96-808 (La.App. 1 Cir. 2/14/97); 691 So.2d 122; Patin v. Imperial Lloyds Ins. Co., 95-841 (La.App. 3 Cir. 1/17/96); 670 So.2d 238; Jefferson v. K-Mart Corp., 94-1550 (La.App. 3 Cir. 6/28/95); 663 So.2d 36; LeBlanc v. Hughes, 94-347 (La. App. 3 Cir. 1/11/95); 649 So.2d 1063, writ denied, 95-345 (La.3/24/95); 651 So.2d 297; Guilbeaux v. Martin Mills, Inc., 93-1359 (La.App. 3 Cir. 5/4/94); 640 So.2d 472, writ denied 94-1444 (La.8/23/94); 642 So.2d 1291; Dugas v. Rosary House, 93-42 (La.App. 3 Cir. 4/6/94); 635 So.2d 570; Mitchell v. Abbeville General Hosp., 93-1146 (La.App. 3 Cir. 4/6/94); 635 So.2d 540; Stelly v. United Parcel Service, 600 So.2d 156, (La.App. 3 Cir.1992); Faulk v. Champagne, 590 So.2d 683, (La.App. 3 Cir.1991); Sinegal v. Louisiana Blasters, Inc., 546 So.2d 308, (La.App. 3 Cir.1989); Sanders v. State Farm Mut. Auto. Ins. Co., 516 So.2d 1162, (La.App. 2 Cir.1987); Tannery v. McGee, 488 So.2d 1338, (La.App. 3 Cir. 1986); Campbell v. Luke Const. Co., 465 So.2d 688, (La.1985); Doty v. Safeco Ins. Co., 400 So.2d 718, (La.App. 3 Cir.), writ denied, 409 So.2d 611 (La.1981).